```
 1                IN THE UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF OREGON

 3   SOUL'D OUT PRODUCTIONS, LLC,  )
     an Oregon limited liability   )
 4   company,                      )
                                   )
 5            Plaintiff,           )  Case No. 3:18-cv-00598-MO
                                   )
 6       v.                        )
                                   )
 7   ANSCHUTZ ENTERTAINMENT GROUP, )  August 19, 2020
     INC., a Colorado corporation, )
 8   et al.,                       )
                                   )
 9            Defendant.           )  Portland, Oregon
     _____)

10

11

12

13

14

15                        Oral Argument

16                     (By Videoconference)

17                   TRANSCRIPT OF PROCEEDINGS

18          BEFORE THE HONORABLE MICHAEL W. MOSMAN

19            UNITED STATES DISTRICT COURT JUDGE

20

21

22

23

24

25
```

```
 1
 2                              APPEARANCES
 3
 4   FOR THE PLAINTIFF:      Mr. Nichola F. Aldrich, Jr.
                             Schwabe, Williamson & Wyatt
 5                           1211 S.W. Fifth Avenue, Suite 1900
                             Portland, OR 97204
 6
 7
 8   FOR THE DEFENDANTS:     Mr. Justin W. Bernick
                             Hogan Lovells US LLP
 9                           555 Thirteenth Street, NW
                             Washington, DC 20004
10
11                           Mr. Casey M. Nokes
                             Cable Huston LLP
12                           1001 S.W. Fifth Avenue, Suite 2000
                             Portland, OR 97204
13
14
15
16   COURT REPORTER:        Bonita J. Shumway, CSR, RMR, CRR
                             United States District Courthouse
17                           1000 S.W. Third Ave., Room 301
                             Portland, OR  97204
18                           (503) 326-8188
19
20
21
22
23
24
25
```

1    (P R O C E E D I N G S)

2    (August 19, 2020; 11:11 a.m.)

3    * * * * *

4    THE COURTROOM DEPUTY:  Your Honor, this is the time

5    and place set for a video oral argument in Case No.

6    3:18-cv-598-MO, Soul'd Out Productions, LLC versus Anschutz

7    Entertainment Group.

8    We do have a court reporter recording these

9    proceedings, and we ask that you mute your video connection

10   and/or microphone while others are speaking to not be so

11   distracting with the background noise.

12   Counsel, can you identify yourself for the record.

13   MR. ALDRICH:  Your Honor, this is Nika Aldrich of

14   Schwabe, Williamson & Wyatt on behalf of plaintiff Soul'd Out

15   Productions.

16   MR. NOKES:  Your Honor, this is Casey Nokes at Cable

17   Huston on behalf of defendants, acting as local counsel.

18   MR. BERNICK:  Your Honor, this is Justin Bernick from

19   Hogan Lovells, also on behalf of defendants.

20   THE COURT:  Thank you all for being here.  It's been

21   an interesting morning, and some of you were able to peek into

22   a criminal case plea.  I always like it when civil attorneys

23   listen in on criminal case pleas, because it tends to calm then

24   down a little bit, understanding that the worst that can happen

25   to you today is that no one is going to prison for a minimum of

1    ten years and a mandatory life sentence.  So those tend to put

2    things into perspective.  And then I also had the privilege of

3    watching Mr. Aldrich tie his tie this morning.  So that -- I

4    was able to check out his methodology here to see how that

5    went.  So, all in all, a beneficial morning for all of us.

6            I want to give you my tentative thoughts here and

7    then see where things stand by way of oral argument.

8            So we have four claims left potentially headed

9    forward, the three really what I'll call intentional

10   interference claims.  They're different labels, and two are

11   from California and one is from Oregon, but elements of those

12   claims are difficult to distinguish, and I don't think it's

13   important for today's purposes that we have to make much

14   distinction among them, since the biggest issues apply equally

15   and similarly across all three claims.

16           And then the fourth claim, the California unfair

17   competition law, does have different elements and different

18   issues.

19           So we're here on a motion to dismiss, and the

20   principal theory on the intentional interference claims is the

21   lack of knowledge by defendant.  And that's been referred, I

22   think, helpfully by way of a shorthand as the timing issue,

23   because previously and today, we're thinking about knowledge in

24   terms of two different times, knowledge the defendant might

25   have had relevant to the elements of these claims -- or

```
 1    relevant to the existence of the relationship, I should say,
 2    and the time of the formation of the contract, if you want to
 3    think of it that way, which would be the formation or signing
 4    of the radius clause.
 5              And the second point in time that's part of the
 6    timing issue is at the time of the enforcement of the contract.
 7    And, of course, each side argues for its own time period.
 8              I've discussed this previously, and I've -- with you
 9    all, and I've expressed some skepticism about plaintiff's
10    theory that the relevant time period is the time period of the
11    enforcement of the radius clause not the formation of it, but
12    I've never ruled on it previously.  And, candidly, I'm now no
13    longer skeptical about that argument.  It makes some sense to
14    me.
15              And I do that by looking at two sources of
16    information.  One is just the elements of the claims.  And I
17    don't find in the elements of the claims any requirement -- if
18    you think of that as a form of statutory construction almost, I
19    don't find anywhere in those elements any requirement that if
20    the -- that if some sort of contract is the method of
21    interference, that you look to whether the relevant knowledge
22    of the existence of the relationship was present in defendant
23    at the time of the formation of the contract versus enforcement
24    of it.  So it's not there.
25              And then there is some authority -- I agree that it's
```

1   merely persuasive and not directly on point, but there is some

2   authority for this idea in *Edwards v. Arthur Andersen*.

3           There is, conversely, no contrary authority; that is,

4   no authority supporting the idea that I need to look at the

5   formation.  There's this argument that it's rational to say,

6   well, if I'm the defendant and I enter into a radius clause

7   with someone and I don't know anything about this other

8   economic relationship when I entered into the radius clause,

9   that it can't be wrong later to simply enforce the clause.  But

10  I guess I'm now of the view that I'm not sure it matters much,

11  that I'm just to look at the elements and see whether in

12  interfering it was done with knowledge of the relationship.

13          So those are my tentative thoughts, and if that's

14  correct, there are a couple of other points also raised by the

15  defendant, even if the timing issue goes against them, as to

16  why these three claims should fail.

17          One is the failure to show any intentional

18  interference.  And that doesn't entirely but it principally

19  rests on the argument in point number one, the timing issue;

20  that is, if the defendant is correct about the timing issue

21  being that I look only at the formation of the radius clause

22  not its enforcement, then at that time there's also a failure

23  to show intentional interference.  But if plaintiff wins that

24  argument, then plaintiff has, of course, an argument that

25  there's the interference in the enforcement.  So that's, I

1  think, a derivative argument of point number one.

2          And the third argument raised against these claims is

3  that there's no actual wrongfulness.

4          Give me just a moment here.

5          And so plaintiff has alleged previously four kinds of

6  wrongfulness:  the antitrust problem; the violation of the Code

7  16600; the violation of the Oregon common law provision; and

8  wrongful because of fraud.  Those are the four sort of

9  components of wrongfulness plaintiff has previously alleged.

10          The first one is gone by the law of the case.

11  Previously plaintiff argued that AEG had ignored the first and

12  fourth reasons.  Well, the first one is gone and the fourth one

13  wasn't ignored, or at least isn't for my purposes today

14  ignored, and that is there is sort of a comprehensive Footnote

15  10 in defendant's pleading laying out its reasons why it thinks

16  there just cannot be a credible allegation of fraud here.  I

17  guess that's sort of an *Iqbal/Twombly* argument about just can't

18  be so.  And so I'll be curious to hear about the plaintiff's

19  position on fraud.

20          But as to the second and third, the only real

21  argument I've had so far that I'm aware of from defendant is a

22  lack of standing.  And that's, of course, also no longer a

23  viable argument for defendant on law of the case.  And so I

24  think those claims, if I'm right about the timing issue, those

25  claims have to go forward past the motion to dismiss stage.

1          So perhaps it would be helpful if we stopped there

2     and just waited on the UCL until we're finished with argument

3     on these intentional interference claims.

4          Since it's defendant's motion, I'll start with

5     defendant.

6          MR. BERNICK:  Thank you, Your Honor.  Justin Bernick

7     from Hogan Lovells on behalf of defendants.  And I appreciate

8     the framing that Your Honor just provided because it helps

9     address the issues.

10         There are three elements that you have pointed out

11    that we believe Soul'd Out has not plausibly alleged, and we

12    believe that all three of those arguments are still alive and

13    well:  intent and knowledge, which I agree go hand in hand, and

14    then the wrongful conduct element.

15         What I would say is that there's a common thread

16    behind all of these, and that's enforcement.  That's the word

17    that Your Honor used with respect to enforcement.  Your Honor,

18    every case that Soul'd Out has cited, every case we've seen

19    where there has been a claim permitted by a third party, as in

20    this instance, has involved some active enforcement above and

21    beyond merely declining to waive a contract provision.  To be

22    clear, that's all that's been alleged here is the decision not

23    to waive the contract provision at issue.

24         In the *Edwards v. Arthur Andersen* case Your Honor

25    mentioned, the key distinction here -- and I believe we briefed

1    this issue -- is that the Court found that the wrongful conduct
2    at issue was insisting on the employee entering into a new
3    agreement after the subsequent employer was in the picture.
4    And that's the termination of noncompete agreement.  And the
5    Court was explicit about this in the case.  The Court said,
6    "The termination of the noncompete could be considered a
7    wrongful act for purposes of this claim for interference with
8    prospective economic advantage."
9             And so I think a lot hinges on that word that you
10   used, "enforcement," Your Honor.  Merely declining to waive a
11   contract provision should not be sufficient wrongful conduct to
12   restart that knowledge or intent issue.
13            THE COURT:  Let me stop you there for just a second.
14   I don't mean to be too particular about each element, but
15   that's a -- certainly a helpful argument about the wrongfulness
16   of the conduct, your argument that it can't be wrong to decline
17   to waive a provision of an otherwise valid contract, but it
18   gets at the third element and not so much the knowledge
19   element.
20            So is it your position that the same thing means you
21   can't have the knowledge element that's required by law or what
22   is your argument on the knowledge element?
23            MR. BERNICK:  I think what Your Honor is getting at
24   is that if merely declining to waive the contract provision is
25   sufficient wrongful conduct -- and we submit it's not, but if

1  it were, then Your Honor is correct.  So AEG/Coachella had

2  knowledge, according to the complaint, at the time that it

3  declined to waive a provision.  That's alleged in the

4  complaint.  Whether it's true or not, that's alleged.

5        So I think Your Honor is correct that this boils down

6  to this issue of what is wrongful conduct, what would

7  enforcement actually look like.  And so it is a type of

8  enforcement, but if you look at the cases, the cases are about

9  threatened litigation.  They're about lawsuits seeking to

10 enforce a provision.  They're threatened litigation against

11 employees, threatened litigation against subsequent employers.

12 In *Arthur Andersen*, it was this extreme step of insisting on a

13 new agreement after the defendant became aware of the contract.

14 In the *Ixchel* case that we submitted to Your Honor, there was a

15 contract provision specifically targeted at the plaintiff that

16 mentioned them by name.  So in that type of situation, Your

17 Honor, you can imagine knowledge and intent attaching because

18 there has been some overt act, some conduct aimed at the

19 plaintiff.

20        We don't have that here.  In fact, these radius

21 clause provisions, Your Honor, are in every single artist

22 contract.  This is a boilerplate contract provision, and this

23 goes to the intent issue.  Coachella couldn't have specifically

24 intended harm to Soul'd Out by including a boilerplate contract

25 provision in its contracts, and it doesn't waive any of those

1    provisions.  And we submit that it would be bad public policy,

2    and there's no law to support the notion that declining to

3    waive a provision could be the basis for wrongful conduct.  A

4    contrary rule, the rule espoused by Soul'd Out, Your Honor,

5    would allow a plaintiff to just manufacture a tort claim by

6    demanding that their competitor retroactively waive a binding

7    contract provision, and we submit that can't be the law.

8         Your Honor, there's another case on point that

9    relates to this issue, and this is a case that Soul'd Out

10    actually cited in one of its briefs that it submitted, the

11    *Bernard v. S.B., Inc.* case.  It's an Oregon Court of Appeals

12    case from 2015.  And we can submit this to the Court if it

13    would be helpful.

14         But the Court there says, "As a matter of law, a

15    party invoking the express terms of a contract has a legitimate

16    purpose and does not expose itself to liability for

17    interference with economic relations."

18         And so I think this goes squarely to the wrongful

19    conduct element, the third element.  But if that case is

20    true -- and we submit that it is -- then that also impacts the

21    knowledge and the intent elements of the tort as well.

22         Your Honor, we agree with respect to the third

23    element, wrongful conduct.  We're not making a stand-alone

24    Article III standing argument, the argument that the Ninth

25    Circuit rejected, in fact.  We submit that in our briefs, that

```
 1    wasn't our core argument.  Our argument was about the
 2    substantive elements of the claim.
 3              And one reason it's not wrongful conduct is the
 4    reason I just described, that merely declining to waive a
 5    provision can't be wrongful conduct.  But there's a second
 6    reason, and this has also been briefed in both our initial
 7    motion to dismiss and the second motion to dismiss.  Even
 8    assuming merely declining to waive a contract provision could
 9    be wrongful conduct, here there are arguments where as a matter
10    of law this contract provision is perfectly lawful, and there
11    are reasons both under California law and Oregon law.
12              Under California law -- and this was briefed in our
13    first motion to dismiss -- Section 16600 does not apply because
14    the contract is a personal services contract, and under
15    California law, under California Labor Code Section 2855(a),
16    and Civil Code 3423(e), defendant is allowed to specifically
17    enforce an exclusive contract for personal services of a
18    "special, unique, unusual, extraordinary, or intellectual
19    character," like contracts of performing arts.
20              And there's a case on point on this issue, Your
21    Honor, we cite in our briefs.  It's the MCA Records v. Olivia
22    Newton-John case, where there the defendant -- I'm sorry, the
23    plaintiff, MCA Records, had an exclusive agreement with Olivia
24    Newton-John.  Olivia Newton-John wanted to go record for
25    someone else, and MCA sued and tried to get a preliminary
```

injunction.   In defending against that preliminary injunction,
Olivia Newton-John said, now, wait a second.   Section 16600
bars this noncompete and invalidates it.   The Court said no,
there's this countervailing statute in California that allows
for specific performance of the noncompete.

     So, in other words, Your Honor, even if declining to
waive the contract provision could be unlawful conduct or
wrongful conduct -- and we don't agree that it is -- there's
this separate issue we've already raised that as a matter of
law, this contract could be specifically enforced, so it
certainly can't be wrongful conduct.   And there's no
allegations in the complaint that could plead facts to get
around this statute.

     Your Honor, then there's a second point with respect
to California law, and this is the supplemental authority that
we submitted to the Court this week.   It's a late-breaking case
from the California Supreme Court, the *Ixchel* case from
August 3rd.   And that case says in contracts between companies,
Section 16600, it doesn't apply a per se rule.   It applies the
same exact rule of reason that Your Honor already applied to
Soul'd Out's claims under the Cartwright Act.   You apply the
rule of reason, which involves antitrust injury, proving a
relevant market, market power, all the things that went into
Your Honor's analysis of the antitrust claims, and those claims
were dismissed with prejudice.   That's the same exact analysis

1    that you should apply under Section 16600 when you're

2    evaluating claims between businesses.

3         Now, I saw in Soul'd Out's response that that assumes

4    facts not before the Court, but I've got the contracts with the

5    three artists right here in front of me.  We can submit them to

6    Your Honor.  Tank and the Bangas is not an individual, it's an

7    LLC, and we can share those contracts, and they're proper for

8    consideration on a motion to dismiss because the complaint

9    references those and challenges those contract provisions.

10        So because of that, the 16600 claim fails for those

11   two independent reasons.  First, it's just a personal services

12   contract and we can specifically enforce it.  It's far from

13   unlawful.  Second of all, we have this issue under *Ixchel*,

14   which says the Court has already made this determination.

15   Soul'd Out has failed to plead a rule of reason antitrust

16   claim, and therefore the Section 16600 claim fails for exactly

17   the same reasons.

18        So we don't think that this issue of the third

19   element of wrongful conduct rises or falls just based on the

20   Ninth Circuit's ruling on standing.  There's this threshold

21   issue of if declining to waive the contract provision can ever

22   be unlawful, and there's a second issue under California law,

23   the provision itself is presumptively lawful, and therefore

24   declining to waive it can't be wrongful conduct.

25        And the same thing is true in Oregon, Your Honor.

1    Under Oregon, we already know the rule of reason applies.  This

2    is a common law claim and so all that same analysis applies.

3    But that same *Bernard* case that I was referencing, Your Honor,

4    that Soul'd Out cited previously, where -- where expressly

5    invoking the terms of the contract can't be the basis of the

6    claim, that case also says that when you have a provision

7    that's voidable but not actually void, it can't give rise to a

8    tort claim.  The Court said, quote, the -- the plaintiff's tort

9    as claim is rejected because, quote, at most the noncompetition

10   agreement was voidable, not void, but remained valid and in

11   effect at the time that defendant invoked it.

12        Like in this case, the defendant just invoked a

13   provision.  There had been no effort made under Oregon law to

14   void the contract, and therefore merely invoking it was not

15   sufficient wrongful conduct for the tort claim.  This is a

16   pretty clear -- pretty clear rule.

17        And so I think there's several hurdles here, Your

18   Honor, to getting to a claim.  It's not just Article III

19   standing, it's is declining to invoke a contract provision

20   sufficient wrongful conduct.  But even if that were enough --

21   and we submit that it's not -- the contract provision that

22   underlies these things is presumptively lawful.  Soul'd Out --

23   I'm sorry, Coachella would be entitled to an injunction to

24   enforce these provisions as a matter of law, and therefore

25   Soul'd Out can't plead that third element of its claim.

1      THE COURT:  Thank you.

2           I want to walk back through this just a little bit

3  with you.  So we're going to focus then on this element of

4  wrongfulness, because the other two stand or fall on the timing

5  question and perhaps, to some degree, on the wrongfulness

6  question.  And I'm tentatively of a mind to say that the timing

7  question can look at the time of enforcement, not to decide

8  wrongfulness, to be sure, but just to decide the moment in time

9  in which knowledge can be evaluated.  So we'll focus on the

10  wrongfulness.

11           And there are -- again, I'm looking at a limited

12  record to some degree.  I want to stick with the record I have.

13  There are these four avenues of wrongfulness alleged by

14  plaintiff here.  The first is, as you'll agree, gone because

15  the antitrust claim is gone and it can't be relied upon as

16  wrongfulness, and the fourth is your allegation of fraud.

17           And I guess you stand by your Footnote 10 still today

18  as your theory for why fraud just cannot be a theory of

19  wrongfulness here?

20           MR. BERNICK:  We do, Your Honor.  We actually thought

21  that this issue had already been dispensed with in your

22  opinion, and it wasn't appealed, and so it still stands.  It's

23  not impacted by the ruling with respect to Article III

24  standing.  You know, I think that our position is it can't be

25  fraud to assert that Soul'd Out is a festival when its own

1    website says it's a festival and there's a statement in open

2    court that it was a festival.  How can that be fraud, intent to

3    deceive?  I think that issue has been dispensed with already in

4    the case.

5              MR. ALDRICH:  Your Honor, if it's helpful, I could

6    help resolve issue four.

7              THE COURT:  Go ahead.

8              MR. ALDRICH:  Your Honor, when we last met on this

9    case, Your Honor following the hearing allowed us to file an

10   amended complaint to elaborate further on point four, claiming

11   that what we had in the complaint at this point with respect to

12   point four was insufficient to pass a motion to dismiss stage.

13   Your Honor gave us time to further amend to address point four.

14   We notified the Court that we did not intend to take that

15   invitation and that we were going to appeal on the other three

16   points instead.  So we did not appeal point -- we did not

17   address point four and we are not pursuing that.

18             THE COURT:  Thank you very much.

19             So we'll stick with essentially the theory of

20   California law and the theory of Oregon law for wrongfulness.

21             And you've advanced -- I'll turn back to counsel for

22   defendant first now.  So you've advanced your reasons why you

23   think these don't pass muster on a motion to dismiss on the

24   theory of wrongfulness.  And I just want to be sure, setting to

25   one side your supplemental authority, you've tried to, I

```
 1    thought, identify where you previously made these arguments
 2    instead of making new arguments.
 3              Is that your position?
 4              MR. BERNICK:  Yes, we have previously made these
 5    arguments.  So specifically with respect to the wrongful
 6    conduct element, the most recent place we made those
 7    arguments -- I'm getting some static.  Hopefully you can hear
 8    me.
 9              The most recent point in time we made the arguments
10    was in the motion to dismiss the second amended complaint at
11    pages 31 to 32, and then the reply brief at pages 28 to 31,
12    where I made the argument that Soul'd Out could not satisfy the
13    wrongful conduct element.
14              And then with respect to the two subsidiary points I
15    made about the legality of the contract provision under
16    California and Oregon law, the argument with respect to Section
17    16600 and the personal services contract is made in the motion
18    to dismiss the first amended complaint at pages 23 to 24, and
19    the reply at page 22.
20              The argument about Ixchel is an argument we didn't
21    have until the Court ruled on August 3rd, and we brought it to
22    your Court's attention -- to the Court's attention earlier this
23    week.
24              With respect to the Oregon legality -- the legality
25    of the Oregon provision, we made that argument in the
```

1    first amended -- motion to dismiss the first amended complaint

2    at pages 25 to 27, and the reply on pages 26 to 29.

3             So we have made those arguments, Your Honor.

4             The authority that you mentioned, the *Bernard* case,

5    that came about because Soul'd Out cited it in their appellate

6    brief.  And it is a helpful case on these arguments that we've

7    previously raised, and so that's why I'm raising it here.

8             THE COURT:  You made the arguments, you didn't cite

9    *Bernard* previously, but you're relying on it today as a case

10   that at least isn't new to me as a cited authority but new in

11   terms of buttressing your argument to you, right?

12            MR. BERNICK:  That's correct.  It was a case cited in

13   Soul'd Out's appellate brief, to be clear, Your Honor.  I'm not

14   sure that it had been cited in the briefs below.  But it was

15   cited in the appellate brief, so it should come as no surprise

16   to plaintiff.

17            THE COURT:  Thank you very much.

18            For plaintiff, your response?

19            MR. ALDRICH:  Yes, Your Honor.  Thank you.

20            Indeed, it seems like a lot of the arguments were

21   ones that were not in the motion to dismiss that's before the

22   Court now.  Some of the arguments that were made were made in

23   the first motion to dismiss and then were abandoned by the time

24   we got to the second motion to dismiss.  So it feels like I'm

25   being called upon to address arguments that are not in the

1    motion that's pending before the Court.

2           With respect to -- there's a couple key points I want

3    to raise first.  If Your Honor agrees with us on the timing

4    issue, then wrongfulness is not relevant to a California claim

5    for intentional interference with the contract.  There is no

6    wrongfulness element for intentional interference with a

7    contract under California law.  So, in other words, if Your

8    Honor agrees with us on the timing issue, then that claim has

9    to go forward.

10           THE COURT:  You're talking about --

11           MR. ALDRICH:  With respect to wrongful -- Pardon?

12           THE COURT:  -- Count 4?

13           MR. ALDRICH:  I believe it's Count 4, yes.

14           THE COURT:  All right.  Thank you.

15           MR. ALDRICH:  Actually, I think it's Count 5,

16    actually, but I don't have it in front of me.

17           But intentional interference with contractual

18    relations I believe is the language under California law.

19           THE COURT:  All right.  Thank you.

20           MR. ALDRICH:  Okay.  So that's the first point.

21           And so it sounds like one thing addressed here is

22    primarily issues about whether the enforcement of the

23    agreement -- of what we allege is an illegal agreement is

24    wrongful.  And with respect to Oregon law, I have not heard an

25    argument yet about why the contract can be judged to be legal

1    and not wrongful under Oregon law.  It is a rule of reason

2    analysis, and that rule of reason analysis or reasonability

3    analysis is subject to discovery, and the pleadings are

4    certainly sufficient to allege that what they have done is not

5    reasonable.

6         They mentioned the *Bernard* case, which was raised on

7    different points in the appellate brief but is irrelevant here

8    for purposes of wrongfulness because that concerned specific

9    language in an Oregon state statute about clauses being

10   voidable versus void.  It's completely irrelevant here.  We're

11   not relying on a statute.  It's a statute having to do with

12   government employees, I believe.  The *Bernard* argument is

13   irrelevant here.

14        And so I don't see why the case does not move forward

15   with respect to our allegation that the contract is illegal

16   under Oregon law.

17        Even under California law -- first of all, they'd

18   like to bring in new facts, but they've got a tension here now

19   in that they're arguing on the one hand that these are personal

20   services contracts but on the other hand are corporate

21   contracts.  And I don't understand yet how you can have both a

22   personal services contract, which is generally specific to an

23   individual performance, and also have it be a corporate

24   contract.

25        But in any event, we addressed in our supplemental

1  authority brief --

2          THE COURT:  If I can pause you there for just a

3  moment.

4          I guess I don't understand the issue, why you have a

5  hard time imagining that to be possible.  Why can't, you know,

6  Olivia Newton-John be a corporation for purposes of contracting

7  and as a corporation enter into a personal services contract?

8  Why can't a lawyer LLC enter into a personal services contract?

9          MR. ALDRICH:  Well, it's the type of personal

10  services contract that is referenced in that California

11  statute, or the statute that was referenced.  That again is not

12  in the briefing that is subject to the motion here, but --

13          THE COURT:  Well, I'm just trying to get at why you

14  think it's difficult.  I can't think of a personal services

15  contract I've ever entered into with anyone that wasn't

16  actually with some sort of corporate form as opposed to just an

17  individual.

18          MR. ALDRICH:  Yes, Your Honor.  I would have to go

19  back and actually attempt to reconcile the law on that, but my

20  recollection is that the statute that was at issue that they're

21  referring to that provides an exception for 16600 for certain

22  types of artists might conflict with the reading that they have

23  of the *Ixchel* case.  I don't think it's necessarily relevant

24  here because I believe that their argument about personal

25  services contracts isn't even in their motion to dismiss and it

1    relies on a bunch of facts that are not in the complaint that
2    they'd like to raise now.
3           But in any event -- and it also has a reference about
4    how much money people are being paid.  There are no facts that
5    are in the record that would allow the Court to dismiss the
6    case on those grounds.
7           But in any event, it's not entirely relevant because
8    we have sufficiently pleaded that the contract is illegal under
9    Oregon law.
10          THE COURT:  Thank you.
11          Let's turn to the unfair competition law.
12          Now, the only argument here that I really want to
13   focus on is the argument that this California statute shouldn't
14   apply in cases like ours with sort of a limited connection to
15   the state of California.  And you've each cited the facts that
16   you think show or -- show the presence of or absence of some
17   connection to California.
18          Before we get to those facts, I want to hear from
19   each of you what you think the basic methodology is by which,
20   generally speaking, one evaluates whether this California
21   statute applies, if you know of one.
22          I'll start with the moving party, defendant.
23          MR. BERNICK:  Thank you, Your Honor.
24          So I would admit that there's -- that the case law
25   isn't as precise on this point as we would probably like, but I

1    think it is pretty clear from the cases that we cite in our

2    papers that the statute was not enacted to protect entities

3    outside of California for harm that occurs outside of

4    California.

5          And here we have both.  Those are the factors we

6    would submit the Court should evaluate.  Where is the plaintiff

7    located who is trying to invoke the law?  Are they a California

8    resident, a California corporation?  Here that's not true.

9    Soul'd Out is an Oregon entity.

10         And separately, where is the harm experienced?  And

11   the harm here is experienced in Oregon.  All the harm alleged

12   is a failure to generate profits within Oregon.

13         So we would submit that those two factors are

14   important here, as we said in our brief.

15         THE COURT:  So you're saying the harm alleged is the

16   failure to generate profits, but the harm actually alleged is

17   interference with business relationships and contracts.  So

18   where did that alleged harm occur?

19         MR. BERNICK:  So I think from our vantage point

20   what's relevant in the UCL, the UCL is protecting Californians.

21   This isn't a question of where someone happened to be sitting

22   when they signed a contract.  It could have -- I actually don't

23   know.  It could have been that the contract was executed in

24   California or any other state.  I think the issue here is who

25   is the plaintiff and where is the harm that they're suffering.

1    I don't actually know, Your Honor, right off the top

2  of my head where the actual contract itself might have been

3  executed.

4    THE COURT:  That's not my question.  You say that the

5  second thing I need to look at is where did the harm occur,

6  right?  And you've contended that the harm occurs in Oregon

7  because the harm that plaintiff is alleging, or at least the

8  harm I should care about is their loss of profits.  But that's

9  not actually the harm plaintiff is alleging.  The harm

10  plaintiff is alleging is interference with business

11  relationships.

12    So if the right question for me to ask is where did

13  the harm occur, then where did the interference with business

14  relationships occur?

15    MR. BERNICK:  I think the only things that I'm aware

16  of the Court could look to are, A, where the contract was

17  entered into between Coachella and the artist or between Soul'd

18  Out and the artist; where the event would be performed, which

19  is Portland, Oregon; and where the plaintiff is located that

20  would generate the profits, and that's also in Oregon.

21    THE COURT:  All right.  Thank you.  Thank you very

22  much.

23    For plaintiff, same question.

24    MR. ALDRICH:  Yes, Your Honor.  So the cases say that

25  the UCL does not apply to claims brought by nonresidents of

1    California for conduct that occurred outside of California.

2    The conduct here occurred inside of California.  Defendants

3    are -- you know, they engage in their business in California.

4    The act of interfering with the contract we understand occurred

5    in California.  And so this is not a case anywhere near the

6    cases that are cited by defendants in which acts that occurred

7    entirely outside of California were held not to be, you know,

8    subject to the UCL.

9            We are attempting to assert California law on

10   activities and conduct against -- and parties that engage in

11   that conduct in California.

12           THE COURT:  Thank you very much.

13           Actually that question is more important to me than

14   debating with you among the various facts you've cited, but if

15   either or both of you want to say something more about the

16   facts you're relying on, as opposed to the methodology we've

17   just discussed, I don't mean to cut you off at the knees.

18           Do you have anything more you wish to add for

19   defendant on that?

20           MR. BERNICK:  Your Honor, there is an additional

21   argument with respect to UCL that I want to make sure we touch

22   on, but it doesn't relate to this extra territoriality issue.

23   I just want to make sure it doesn't get lost in the shuffle.

24           THE COURT:  Go ahead.

25           MR. BERNICK:  So, Your Honor, the only relief

1    available under the unfair competition law is an injunction

2    under California Business and Professions Code 17203.  There's

3    numerous reasons, Your Honor, why an injunction would be

4    inappropriate here.  First of all, as to the three contracts at

5    issue, they expired years ago.  Soul'd Out can get no relief

6    from an injunction as to those contracts.  The artists are not

7    currently bound to any radius clause and Soul'd Out would be

8    free to hire them if they wanted to.  So the only potential

9    injunction here would be an injunction against Coachella's just

10   standard contracts and business practices with all artists.

11   But there's no ability to bring that sort of tort claim.

12   There's no actual controversy with respect to future Coachella

13   artists who are not before the Court.  There's no connection

14   between those artists and -- the hundreds of artists and the

15   handful who might consider Soul'd Out to perform.  So there

16   could be no actual relationship that Coachella might be

17   interfering with, so there's no ability here to bring an

18   injunction claim either for the three at issue or for all of

19   Coachella's contracts generally, and because that's the only

20   relief available under the UCL, the claim should be dismissed

21   for that ground as well.

22           THE COURT:  Thank you.

23           For plaintiff, anything further on this UCL claim?

24           MR. ALDRICH:  No, Your Honor.  I'll just note that

25   these are new arguments again that were not raised in the

1    briefs and, you know, we'd certainly want the opportunity to

2    respond before a claim is dismissed on grounds that are not in

3    the motion to dismiss.

4         MR. BERNICK:  Your Honor, if I may.  I can point you

5    to the pages where the argument is made.

6         THE COURT:  Go ahead.

7         MR. BERNICK:  So the argument is made with respect to

8    the injunctive relief in the motion to dismiss the second

9    amended complaint at page 33, note 26, and then also at the

10   motion to dismiss the first amended complaint at pages 22

11   through 25.

12        THE COURT:  So if you had to respond to the idea that

13   no injunction ought to issue here, given that the relevant

14   contracts have all expired, what would your argument for

15   plaintiff be?

16        MR. ALDRICH:  The language that is used in those

17   contracts, our understanding, is continuously used, and they

18   continue to use this language, and that language interferes

19   with our business, and therefore there is grounds to seek an

20   injunction against them continuing to put this language in

21   contracts, language that improperly impedes upon our business

22   up in Oregon, a thousand miles away from where the festival

23   takes place.  So this is a situation where we have repeating

24   harm occurring.  And I believe the statute allows -- the

25   California statute allows the Court to issue an injunction to

1    prevent future harm from activities that have caused harm in

2    the past.

3            Indeed, these three contracts are no longer --

4    there's no need to enjoin these three contracts because the

5    radius clause has expired, this case was filed years ago, but

6    the clause continues to be used and there's continuing harm

7    from this clause, and if it is an illegal clause under Oregon

8    or California law, this Court should enjoin Coachella from

9    using this clause, at least to the extent that it impacts

10   businesses here in Oregon.

11           MR. BERNICK:  Your Honor, if I may.

12           THE COURT:  Go ahead.

13           MR. BERNICK:  The tension between what counsel just

14   said and the argument about wrongful conduct, I believe what he

15   just described is the mere entry into a contract is wrongful

16   conduct.  And if that's true, then there can be no knowledge

17   and intent with respect to these three contracts at issue.

18           There's been no effort to -- there's no declination

19   to waive any of these provisions in other parties' contracts

20   not before the Court.  There's been no effort to enforce those.

21   Those parties are not in front of the Court, Your Honor, and

22   there's binding authority on this issue that we cite in our

23   brief, the *Dowell v. Biosense* case, where the Court held that

24   it could not issue an injunction where, quote, the contract had

25   already expired by its terms and a broader injunction would,

1    quote, affect agreements with persons not before the Court and

2    whose interests are not represented in this litigation.

3              It's binding authority, Your Honor.  They can't get

4    an injunction against all of Coachella's contracts, and we

5    submit that that means that the UCL claim should be dismissed.

6              THE COURT:  Thank you.

7              I'll take a brief recess.  If you'll remain on the

8    line, I'll be back in a few minutes to give you my ruling.

9              THE COURTROOM DEPUTY:  This Court is in recess.

10             (A recess is then taken.)

11             THE COURT:  Thank you all for your most helpful

12   arguments here today.  I appreciate that the case has some

13   complexity in its procedural history at this point which

14   informs my ruling to some degree.

15             Let's start with the UCL.  This procedural history

16   comes into play because as against the second amended

17   complaint, the argument that injunctive relief can only be

18   prospective here and isn't any longer applicable is made in the

19   reply brief, so I hadn't really heard from plaintiff earlier on

20   this subject.  So that's a tough spot for plaintiff to be in.

21             There's a separate question that I'll bring up again,

22   which is to what degree I should be considering arguments made

23   against the first amended complaint that were not made against

24   the second amended complaint.  And so, you know, that also

25   comes into play here.

1          On the UCL, however, it's agreed upon by the parties

2    that it's -- as most injunctions are -- prospective only, and

3    that other forms of relief aren't available under the UCL.  And

4    that makes it a fairly straightforward and pretty

5    commonsensical question about whether that remedy or relief is

6    available in this case.

7          And here, in my view, the answer is that it is not.

8    It certainly isn't the sort of set of facts that would ever

9    normally give rise to injunctive relief.  The theory would have

10   to be, sitting here today, that some day Soul'd Out may want to

11   enter into a performance contract with a band and successfully

12   does so, and when it does so with this as yet unknown and

13   unnamed band, that band may also possibly have entered into a

14   contract with Coachella, and that contract may also contain the

15   radius clause and the same language, and the facts may then

16   involve no waiver or other individualized facts to the case

17   that would alter the outcome.  And whatever that is, that's not

18   a case or controversy such that I'm really authorized to do

19   anything about.

20         So I appreciate that plaintiff has had to respond

21   somewhat on the fly to this, and if you look at this issue for

22   plaintiff and find some case or argument that just didn't even

23   occur to you here today that's different from what we

24   discussed, then I'll allow you to raise it.  But on the

25   assumption that the landscape really doesn't change much upon

1    further review for you, then the ruling is going to remain the

2    same, and I am granting the motion to dismiss the UCL claim.

3            On the interference claims, we really are in an area

4    where I'm hearing arguments on the merits really for the first

5    time in the flavor and context in which I have them here.  I

6    have supplemental authority.  There's nothing wrong with

7    providing supplemental authority, I appreciate it, but it is

8    brand-new.  I have a citation to *Bernard* that's cited for

9    reasons never previously advanced to this Court.  So the

10   existence of the case isn't new, but its point on which it's

11   being relied by defendant is brand-new.

12           And the arguments to some degree also suffer to some

13   degree from this issue of some of them raised against the first

14   amended complaint but not the second, or more fully against one

15   versus the other.

16           And then, finally, some of these arguments require, I

17   think, further factual development.  That is, for example, I'm

18   unprepared to simply import wholesale antitrust analysis into

19   an analysis of contract claims here, and there's some degree to

20   which even that analysis imported would require knowing more

21   than I now know.  And there are also facts that I think are

22   readily ascertainable but not on the record here in front of

23   me.  The nature of the underlying contracts, for example, are

24   they personal service contracts, and were they, in fact,

25   entered into in California.  Those are interesting facts I

1 don't yet know which inform the analysis to a greater or lesser

2 degree.

3   In a very -- in a simpler case with less history, I

4 might be tempted to just say, well, let's just round out the

5 briefing here more completely.  And here I don't say this by

6 way of fault finding at all -- I really mean this -- but I was

7 presented with the opportunity for more briefing on the theory

8 that it would help me understand the Ninth Circuit's ruling in

9 this case.  And I agreed with plaintiff that it wasn't really

10 much of a lift to understand what the Ninth Circuit said here,

11 so I didn't feel any additional briefing would be useful.  I

12 might have been tempted if someone had said, we just have

13 better arguments than we've made in the past and we'd like to

14 make them, but that's not how it was presented, and I say I'd

15 be tempted because I think I probably even then would have been

16 more likely to say let's just move on to summary judgment.

17   So for the variety of reasons I've just asserted,

18 including the need for further factual development on some or

19 all of the reasons why defendant asserts these claims must

20 fall, I am denying the motion to dismiss the intentional

21 interference claims, and we'll pick these arguments up again if

22 they're appropriate at summary judgment.

23   Any questions from the moving party, from defendant

24 here on my rulings?

25   MR. BERNICK:  No, Your Honor.

1    THE COURT:  From plaintiff?

2         MR. ALDRICH:  Your Honor, I would just request maybe

3    a couple days to review the UCL issue.  I want to review the

4    statute again and review the issue with my client before Your

5    Honor enters any judgment with respect to the UCL claim.  But

6    other than that, we have no further questions.

7         THE COURT:  Thank you very much.

8         I assume we don't really have a schedule right now

9    moving towards summary judgment, or do we?

10        MR. ALDRICH:  We don't have a schedule at all, Your

11   Honor.  We don't have an answer.

12        THE COURT:  Do you want to meet together and propose

13   one or try to hammer that out right now?

14        MR. BERNICK:  I think, Your Honor, from defendants'

15   perspective, it would be a good idea for us to connect first

16   and see if we can come to an agreement, if that's okay with

17   Your Honor.

18        THE COURT:  I prefer that, since it allows you to

19   really build into your own schedules in an informal way the

20   turning points that you need to decide.

21        So you'll have plenty of time for plaintiff to take a

22   look at the UCL, and then I'll ask you, let's say within two

23   weeks, can you all submit a proposed case management schedule

24   that can be joint or it can be joint in part and outline your

25   areas of disagreements.

```
1            Will two weeks work for plaintiff?
2            MR. ALDRICH:  Yes.  Two weeks works, Your Honor.  We
3    would request that an answer be forthcoming sooner, pursuant to
4    the rules, but with respect to a case schedule going forward,
5    two weeks to work with counsel and come up with an agreement is
6    just fine.
7            THE COURT:  For defense, can you come up with a
8    schedule in two weeks?
9            MR. BERNICK:  Absolutely, Your Honor.
10           THE COURT:  How about an answer?  What's your plan?
11           MR. BERNICK:  I would need to connect with my client
12   on that.  As you might suspect, with remote working conditions
13   and everything else in the concert industry, I just wouldn't be
14   able to commit today to a timeline, but perhaps that could be
15   the first thing that I meet and confer with counsel for
16   plaintiffs this week, to come up with a timeline.
17           THE COURT:  Very well.  Thank you.
18           Thank you all.  We'll be in recess.
19           MR. ALDRICH:  Thank you, Your Honor.
20           THE COURTROOM DEPUTY:  This court is adjourned.
21           (Proceedings concluded at 12:07 p.m.)
22
23
24
25
```

1

2                                  --o0o--

3

4          I certify, by signing below, that the foregoing is a

5   correct transcript of the record of proceedings in the

6   above-entitled cause.  A transcript without an original

7   signature or conformed signature is not certified.

8

9
    /s/Bonita J. Shumway                  September 2, 2020
10  _____             _____
    BONITA J. SHUMWAY, CSR, RMR, CRR      DATE
11  Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**MR. ALDRICH:** [17] 3/12 17/4 17/7 19/18 20/10 20/12 20/14 20/19 22/8 22/17 25/23 27/23 28/15 34/1 34/9 35/1 35/18

**MR. BERNICK:** [19] 3/17 8/5 9/22 16/19 18/3 19/11 23/22 24/18 25/14 26/19 26/24 28/3 28/6 29/10 29/12 33/24 34/13 35/8 35/10

**MR. NOKES:** [1] 3/15

**THE COURT:** [32] 3/19 9/12 15/25 17/6 17/17 19/7 19/16 20/9 20/11 20/13 20/18 22/1 22/12 23/9 24/14 25/3 25/20 26/11 26/23 27/21 28/5 28/11 29/11 30/5 30/10 33/25 34/6 34/11 34/17 35/6 35/9 35/16

**THE COURTROOM DEPUTY:** [3] 3/2

**-**

--o0o [1] 36/2

**/**

/s/Bonita [1] 36/9

**1**

10 [2] 7/15 16/17
1000 [1] 2/17
1001 [1] 2/12
11:11 [1] 3/2
1211 [1] 2/5
12:07 [1] 35/21
16600 [9] 7/7 12/13 13/2 13/19 14/1 14/10 14/16 18/17 22/21
17203 [1] 27/2
19 [2] 1/7 3/2
1900 [1] 2/5

**2**

2000 [1] 2/12
20004 [1] 2/9
2015 [1] 11/12
2020 [3] 1/7 3/2 36/9
22 [2] 18/19 28/10
23 [1] 18/18
24 [1] 18/18
25 [2] 19/2 28/11
26 [2] 19/2 28/9

28 [1] 18/11
2855 [1] 12/15
29 [1] 19/2

**3**

301 [1] 2/17
31 [2] 18/11 18/11
32 [1] 18/11
326-8188 [1] 2/18
33 [1] 28/9
3423 [1] 12/16
3:18-cv-00598-MO [1] 1/5
3:18-cv-598-MO [1] 3/6
3rd [2] 13/18 18/21

**5**

503 [1] 2/18
555 [1] 2/9

**8**

8188 [1] 2/18

**9**

97204 [3] 2/5 2/12 2/17

**A**

a.m [1] 3/2
abandoned [1] 19/23
ability [2] 27/11

ability... [1] 27/17
able [3] 3/21 4/4 35/14
about [29] 4/23 5/9 5/13 6/7 6/20 7/17 7/18 7/24 9/5 9/14 9/15 10/8 10/9 12/1 18/15 18/20 19/5 20/10 20/22 20/25 21/9 22/24 23/3 25/8 26/15 29/14 31/5 31/19 35/10
above [2] 8/20 36/6
above-entitled [1] 36/6
absence [1] 23/16
Absolutely [1] 35/9
according [1] 10/2
across [1] 4/15
act [4] 9/7 10/18 13/21 26/4
acting [1] 3/17
active [1] 8/20
activities [2] 26/10 29/1
acts [1] 26/6
actual [4] 7/3 25/2 27/12 27/16
actually [13] 10/7 11/10 15/7 16/20 20/15 20/16 22/16

22/19 24/6 24/16 25/1 25/9 26/13
add [1] 26/18
additional [2] 26/20 33/11
address [4] 8/9 17/13 17/17 19/25
addressed [2] 20/21 21/25
adjourned [1] 35/20
admit [1] 23/24
advanced [3] 17/21 17/22 32/9
advantage [1] 9/8
AEG [2] 7/11 10/1
AEG/Coachella [1] 10/1
affect [1] 30/1
after [2] 9/3 10/13
again [6] 16/11 22/11 27/25 30/21 33/21 34/4
against [14] 6/15 7/2 10/10 10/11 13/1 26/10 27/9 28/20 30/4 30/16 30/23 30/23 32/13 32/14
ago [2] 27/5 29/5
agree [5] 5/25 8/13 11/22 13/8 16/14

agreed [2] 31/1 33/9
agreement [9] 9/3 9/4 10/13 12/23 15/10 20/23 20/23 34/16 35/5
agreements [1] 30/1
agrees [2] 20/3 20/8
ahead [4] 17/7 26/24 28/6 29/12
aimed [1] 10/18
al [1] 1/8
Aldrich [3] 2/4 3/13 4/3
alive [1] 8/12
all [28] 3/20 4/5 4/5 4/5 4/15 5/9 8/12 8/16 8/22 13/23 14/13 15/2 20/14 20/19 21/17 24/11 25/21 27/4 27/10 27/18 28/14 30/4 30/11 33/6 33/19 34/10 34/23 35/18
allegation [3] 7/16 16/16 21/15
allegations [1] 13/12
allege [2] 20/23 21/4
alleged [11] 7/5 7/9

Case 3:18-cv-00598-MO   Document 261-4   Filed 09/15/20   Page 39 of 63

**A**

alleged... [9]  8/11
8/22 10/3 10/4
16/13 24/11 24/15
24/16 24/18

alleging [3]  25/7
25/9 25/10

allow [3]  11/5 23/5
31/24

allowed [2]  12/16
17/9

allows [4]  13/4
28/24 28/25 34/18

almost [1]  5/18

alone [1]  11/23

already [7]  13/9
13/20 14/14 15/1
16/21 17/3 29/25

also [17]  3/19 4/2
6/14 6/22 7/22
11/20 12/6 15/6
21/23 23/3 25/20
28/9 30/24 31/13
31/14 32/12 32/21

alter [1]  31/17

always [1]  3/22

am [2]  32/2 33/20

amend [1]  17/13

amended [11]
17/10 18/10 18/18
19/1 19/1 28/9
28/10 30/16 30/23

among [2]  4/14
26/14

analysis [10]  13/24
13/25 15/2 21/2
21/2 21/3 32/18
32/19 32/20 33/1

and I've [1]  5/8

and/or [1]  3/10

Andersen [3]  6/2
8/24 10/12

another [1]  11/8

ANSCHUTZ [2]
1/7 3/6

answer [4]  31/7
34/11 35/3 35/10

antitrust [6]  7/6
13/22 13/24 14/15
16/15 32/18

any [14]  5/17 5/19
6/17 10/25 21/25
23/3 23/7 24/24
27/7 29/19 30/18
33/11 33/23 34/5

anyone [1]  22/15

anything [4]  6/7
26/18 27/23 31/19

anywhere [2]  5/19
26/5

appeal [2]  17/15
17/16

appealed [1]  16/22

APPEARANCES
[1]  2/2

appellate [4]  19/5
19/13 19/15 21/7

applicable [1]
30/18

applied [1]  13/20

applies [4]  13/19
15/1 15/2 23/21

apply [7]  4/14
12/13 13/19 13/21
14/1 23/14 25/25

appreciate [4]  8/7
30/12 31/20 32/7

appropriate [1]
33/22

are [43]

area [1]  32/3

areas [1]  34/25

aren't [1]  31/3

argued [1]  7/11

argues [1]  5/7

arguing [1]  21/19

argument [39]

arguments [21]
8/12 12/9 18/1 18/2
18/5 18/7 18/9 19/3
19/6 19/8 19/20
19/22 19/25 27/25
30/12 30/22 32/4
32/12 32/16 33/13

**A**

arguments... [1] 33/21
around [1] 13/13
Arthur [3] 6/2 8/24 10/12
Article [3] 11/24 15/18 16/23
artist [3] 10/21 25/17 25/18
artists [7] 14/5 22/22 27/6 27/10 27/13 27/14 27/14
arts [1] 12/19
as [31] 3/17 4/22 5/18 6/15 7/20 8/19 11/14 11/21 12/9 13/9 15/9 15/24 16/14 16/15 16/18 19/9 19/10 19/15 22/7 22/16 23/25 23/25 24/14 26/16 27/4 27/6 27/21 30/16 31/2 31/12 35/12
ascertainable [1] 32/22
ask [3] 3/9 25/12 34/22
assert [2] 16/25 26/9
asserted [1] 33/17

asserts [1] 33/19
assume [1] 34/8
assumes [1] 14/3
assuming [1] 12/8
assumption [1] 31/25
attaching [1] 10/17
attempt [1] 22/19
attempting [1] 26/9
attention [2] 18/22 18/22
attorneys [1] 3/22
August [4] 1/7 3/2 13/18 18/21
August 3rd [2] 13/18 18/21
authority [13] 5/25 6/2 6/3 6/4 13/15 17/25 19/4 19/10 22/1 29/22 30/3 32/6 32/7
authorized [1] 31/18
available [4] 27/1 27/20 31/3 31/6
Ave [1] 2/17
Avenue [2] 2/5 2/12
avenues [1] 16/13
aware [3] 7/21 10/13 25/15
away [1] 28/22

**B**

back [4] 16/2 17/21 22/19 30/8
background [1] 3/11
bad [1] 11/1
band [3] 31/11 31/13 31/13
Bangas [1] 14/6
bars [1] 13/3
based [1] 14/19
basic [1] 23/19
basis [2] 11/3 15/5
be [66]
became [1] 10/13
because [20] 3/23 4/23 7/8 8/8 10/17 12/13 14/8 14/10 15/9 16/4 16/14 19/5 21/8 22/24 23/7 25/7 27/19 29/4 30/16 33/15
been [16] 3/20 4/21 8/19 8/22 10/18 12/6 15/13 16/21 17/3 19/14 24/23 25/2 29/18 29/20 33/12 33/15
before [10] 1/18 14/4 19/21 20/1 23/18 27/13 28/2 29/20 30/1 34/4

**B**

behalf [4]  3/14 3/17 3/19 8/7
behind [1]  8/16
being [6]  3/20 6/21 19/25 21/9 23/4 32/11
believe [9]  8/11 8/12 8/25 20/13 20/18 21/12 22/24 28/24 29/14
below [2]  19/14 36/4
beneficial [1]  4/5
Bernard [7]  11/11 15/3 19/4 19/9 21/6 21/12 32/8
Bernick [3]  2/8 3/18 8/6
better [1]  33/13
between [6]  13/18 14/2 25/17 25/17 27/14 29/13
beyond [1]  8/21
biggest [1]  4/14
binding [3]  11/6 29/22 30/3
Biosense [1]  29/23
bit [2]  3/24 16/2
boilerplate [2]  10/22 10/24
boils [1]  10/5

Bonita [3]  2/16 36/9 36/10
both [5]  12/6 12/11 21/21 24/5 26/15
bound [1]  27/7
brand [2]  32/8 32/11
brand-new [2]  32/8 32/11
breaking [1]  13/16
brief [10]  18/11 19/6 19/13 19/15 21/7 22/1 24/14 29/23 30/7 30/19
briefed [3]  8/25 12/6 12/12
briefing [4]  22/12 33/5 33/7 33/11
briefs [5]  11/10 11/25 12/21 19/14 28/1
bring [4]  21/18 27/11 27/17 30/21
broader [1]  29/25
brought [2]  18/21 25/25
build [1]  34/19
bunch [1]  23/1
business [8]  24/17 25/10 25/13 26/3 27/2 27/10 28/19 28/21

businesses [2]  14/2 29/10
buttressing [1]  19/11

**C**

Cable [2]  2/11 3/16
California [38]
Californians [1]  24/20
call [1]  4/9
called [1]  19/25
calm [1]  3/23
came [1]  19/5
can [24]  3/12 3/24 10/17 11/12 14/5 14/7 14/12 14/21 16/7 16/9 17/2 18/7 20/25 21/21 22/2 27/5 28/4 29/16 30/17 34/16 34/23 34/24 34/24 35/7
can't [17]  6/9 7/17 9/16 9/21 11/7 12/5 13/11 14/24 15/5 15/7 15/25 16/15 16/24 22/5 22/8 22/14 30/3
candidly [1]  5/12
cannot [2]  7/16 16/18
care [1]  25/8
Cartwright [1]

Case 3:18-cv-00598-MO   Document 63   Filed 12/11/20   Page 42 of 63

Cartwright... [1] 13/21
case [48]
cases [6]  10/8 10/8 23/14 24/1 25/24 26/6
Casey [2]  2/11 3/16
cause [1]  36/6
caused [1]  29/1
certain [1]  22/21
certainly [5]  9/15 13/11 21/4 28/1 31/8
certified [1]  36/7
certify [1]  36/4
challenges [1]  14/9
change [1]  31/25
character [1]  12/19
check [1]  4/4
Circuit [2]  11/25 33/10
Circuit's [2]  14/20 33/8
citation [1]  32/8
cite [4]  12/21 19/8 24/1 29/22
cited [12]  8/18 11/10 15/4 19/5 19/10 19/12 19/14 19/15 23/15 26/6 26/14 32/8

claim [26]  4/16 8/19 9/7 11/5 12/2 14/10 14/16 14/16 15/2 15/6 15/8 15/9 15/15 15/18 15/25 16/15 20/4 20/8 27/11 27/18 27/20 27/23 28/2 30/5 32/2 34/5
claiming [1]  17/10
claims [22]  4/8 4/10 4/12 4/15 4/20 4/25 5/16 5/17 6/16 7/2 7/24 7/25 8/3 13/21 13/24 13/24 14/2 25/25 32/3 32/19 33/19 33/21
clause [14]  5/4 5/11 6/6 6/8 6/9 6/21 10/21 27/7 29/5 29/6 29/7 29/7 29/9 31/15
clauses [1]  21/9
clear [5]  8/22 15/16 15/16 19/13 24/1
client [2]  34/4 35/11
Coachella [8]  10/1 10/23 15/23 25/17 27/12 27/16 29/8 31/14

Coachella's [3] 27/9 27/19 30/4
Code [4]  7/6 12/15 12/16 27/2
Colorado [1]  1/7
come [5]  19/15 34/16 35/5 35/7 35/16
comes [2]  30/16 30/25
commit [1]  35/14
common [3]  7/7 8/15 15/2
commonsensical [1] 31/5
companies [1] 13/18
company [1]  1/4
competition [3] 4/17 23/11 27/1
competitor [1]  11/6
complaint [16]  10/2 10/4 13/12 14/8 17/10 17/11 18/10 18/18 19/1 23/1 28/9 28/10 30/17 30/23 30/24 32/14
completely [2] 21/10 33/5
complexity [1] 30/13
components [1]  7/9

comprehensive [1] 7/14
concerned [1] 21/8
concert [1] 35/13
concluded [1] 35/21
conditions [1] 35/12
conduct [28] 8/14 9/1 9/11 9/16 9/25 10/6 10/18 11/3 11/19 11/23 12/3 12/5 12/9 13/7 13/8 13/11 14/19 14/24 15/15 15/20 18/6 18/13 26/1 26/2 26/10 26/11 29/14 29/16
confer [1] 35/15
conflict [1] 22/22
conformed [1] 36/7
connect [2] 34/15 35/11
connection [4] 3/9 23/14 23/17 27/13
consider [1] 27/15
consideration [1] 14/8
considered [1] 9/6
considering [1] 30/22

construction [1] 5/18
contain [1] 31/14
contended [1] 25/6
context [1] 32/5
continue [1] 28/18
continues [1] 29/6
continuing [2] 28/20 29/6
continuously [1] 28/17
contract [54]
contracting [1] 22/6
contracts [23] 10/25 12/19 13/18 14/4 14/7 21/20 21/21 22/25 24/17 27/4 27/6 27/10 27/19 28/14 28/17 28/21 29/3 29/4 29/17 29/19 30/4 32/23 32/24
contractual [1] 20/17
contrary [2] 6/3 11/4
controversy [2] 27/12 31/18
conversely [1] 6/3
core [1] 12/1
corporate [3] 21/20

corporation [4] 1/7 22/6 22/7 24/8
correct [6] 6/14 6/20 10/1 10/5 19/12 36/5
could [14] 9/6 11/3 12/8 13/7 13/10 13/12 17/5 18/12 24/22 24/23 25/16 27/16 29/24 35/14
couldn't [1] 10/23
counsel [6] 3/12 3/17 17/21 29/13 35/5 35/15
Count [3] 20/12 20/13 20/15
countervailing [1] 13/4
couple [3] 6/14 20/2 34/3
course [3] 5/7 6/24 7/22
court [35] 1/1 1/19 2/16 3/8 9/1 9/5 9/5 11/11 11/12 11/14 13/3 13/16 13/17 14/4 14/14 15/8 17/2 17/14 18/21 19/22 20/1 23/5 24/6 25/16 27/13 28/25 29/8 29/20

**C**

court... [7]  29/21 29/23 30/1 30/9 32/9 35/20 36/11
Court's [2]  18/22 18/22
Courthouse [1]  2/16
credible [1]  7/16
criminal [2]  3/22 3/23
CRR [2]  2/16 36/10
CSR [2]  2/16 36/10
curious [1]  7/18
currently [1]  27/7
cut [1]  26/17
cv [2]  1/5 3/6

**D**

DATE [1]  36/10
day [1]  31/10
days [1]  34/3
DC [1]  2/9
debating [1]  26/14
deceive [1]  17/3
decide [3]  16/7 16/8 34/20
decision [1]  8/22
declination [1] 29/18
decline [1]  9/16
declined [1]  10/3

declining [1]  8/21 9/10 9/24 11/2 12/4 12/8 13/6 14/21 14/24 15/19
defendant [21]  1/9 4/21 4/24 5/22 6/6 6/15 6/20 7/21 7/23 8/5 10/13 12/16 12/22 15/11 15/12 17/22 23/22 26/19 32/11 33/19 33/23
defendant's [2] 7/15 8/4
defendants [6]  2/8 3/17 3/19 8/7 26/2 26/6
defendants' [1] 34/14
defending [1]  13/1
defense [1]  35/7
degree [8]  16/5 16/12 30/14 30/22 32/12 32/13 32/19 33/2
demanding [1]  11/6
denying [1]  33/20
derivative [1]  7/1
described [2]  12/4 29/15
determination [1] 14/14
development [2]

did [7]  17/14 17/16 17/16 24/18 25/5 25/12 25/13
didn't [4]  18/20 19/8 31/22 33/11
different [6]  4/10 4/17 4/17 4/24 21/7 31/23
difficult [2]  4/12 22/14
directly [1]  6/1
disagreements [1] 34/25
discovery [1]  21/3
discussed [3]  5/8 26/17 31/24
dismiss [21]  4/19 7/25 12/7 12/7 12/13 14/8 17/12 17/23 18/10 18/18 19/1 19/21 19/23 19/24 22/25 23/5 28/3 28/8 28/10 32/2 33/20
dismissed [4]  13/25 27/20 28/2 30/5
dispensed [2]  16/21 17/3
distinction [2]  4/14 8/25
distinguish [1]  4/12

**D**

distracting [1]  3/11
DISTRICT [4]  1/1
1/2 1/19 2/16
do [8]  3/8 5/15
16/20 21/11 26/18
31/18 34/9 34/12
does [7]  4/17 11/16
12/13 21/14 25/25
31/12 31/12
doesn't [6]  6/18
10/25 13/19 26/22
26/23 31/25
don't [22]  4/12 5/17
5/19 6/7 9/14 10/20
13/8 14/18 17/23
20/16 21/14 21/21
22/4 22/23 24/22
25/1 26/17 33/1
33/5 34/8 34/10
34/11
done [2]  6/12 21/4
Dowell [1]  29/23
down [2]  3/24 10/5

**E**

each [4]  5/7 9/14
23/15 23/19
earlier [2]  18/22
30/19
economic [3]  6/8
9/8 11/17

Edwards [2]  6/2
8/24
effect [1]  15/11
effort [3]  15/13
29/18 29/20
either [2]  26/15
27/18
elaborate [1]  17/10
element [15]  8/14
9/14 9/18 9/19 9/21
9/22 11/19 11/19
11/23 14/19 15/25
16/3 18/6 18/13
20/6
elements [10]  4/11
4/17 4/25 5/16 5/17
5/19 6/11 8/10
11/21 12/2
else [2]  12/25 35/13
employee [1]  9/2
employees [2]
10/11 21/12
employer [1]  9/3
employers [1]
10/11
enacted [1]  24/2
enforce [6]  6/9
10/10 12/17 14/12
15/24 29/20
enforced [1]  13/10
enforcement [13]
5/6 5/11 5/23 6/22

6/25 8/16 8/17 8/20
9/10 10/7 10/8 16/7
20/22
engage [2]  26/3
26/10
enjoin [2]  29/4 29/8
enough [1]  15/20
enter [4]  6/6 22/7
22/8 31/11
entered [5]  6/8
22/15 25/17 31/13
32/25
entering [1]  9/2
enters [1]  34/5
ENTERTAINMEN
T [2]  1/7 3/7
entirely [3]  6/18
23/7 26/7
entities [1]  24/2
entitled [2]  15/23
36/6
entity [1]  24/9
entry [1]  29/15
equally [1]  4/14
espoused [1]  11/4
essentially [1]
17/19
et [1]  1/8
evaluate [1]  24/6
evaluated [1]  16/9
evaluates [1]  23/20
evaluating [1]  14/2

# E

even [9]  6/15 12/7 13/6 15/20 21/17 22/25 31/22 32/20 33/15
event [4]  21/25 23/3 23/7 25/18
ever [3]  14/21 22/15 31/8
every [3]  8/18 8/18 10/21
everything [1]  35/13
exact [2]  13/20 13/25
exactly [1]  14/16
example [2]  32/17 32/23
exception [1]  22/21
exclusive [2]  12/17 12/23
executed [2]  24/23 25/3
existence [3]  5/1 5/22 32/10
experienced [2] 24/10 24/11
expired [4]  27/5 28/14 29/5 29/25
explicit [1]  9/5
expose [1]  11/16
express [1]  11/15

expressed [1]  11/6
expressly [1]  15/4
extent [1]  29/9
extra [1]  26/22
extraordinary [1] 12/18
extreme [1]  10/12

# F

fact [3]  10/20 11/25 32/24
factors [2]  24/5 24/13
facts [14]  13/12 14/4 21/18 23/1 23/4 23/15 23/18 26/14 26/16 31/8 31/15 31/16 32/21 32/25
factual [2]  32/17 33/18
fail [1]  6/16
failed [1]  14/15
fails [2]  14/10 14/16
failure [4]  6/17 6/22 24/12 24/16
fairly [1]  31/4
fall [2]  16/4 33/20
falls [1]  14/19
far [2]  7/21 14/12
fault [1]  33/6
feel [1]  33/11
feels [1]  19/24

festival [2] 16/25 17/1 17/2 28/22
few [1]  30/8
Fifth [2]  2/5 2/12
file [1]  17/9
filed [1]  29/5
finally [1]  32/16
find [3]  5/17 5/19 31/22
finding [1]  33/6
fine [1]  35/6
finished [1] 8/2
first [21]  7/10 7/11 7/12 12/13 14/11 16/14 17/22 18/18 19/1 19/1 19/23 20/3 20/20 21/17 27/4 28/10 30/23 32/4 32/13 34/15 35/15
first amended [1] 19/1
flavor [1]  32/5
fly [1]  31/21
focus [3]  16/3 16/9 23/13
following [1]  17/9
Footnote [2]  7/14 16/17
foregoing [1]  36/4
form [2]  5/18 22/16
formation [6]  5/2

## F

formation... [5]  5/3
5/11 5/23 6/5 6/21
forms [1]  31/3
forthcoming [1]
35/3
forward [5]  4/9
7/25 20/9 21/14
35/4
found [1]  9/1
four [9]  4/8 7/5 7/8
16/13 17/6 17/10
17/12 17/13 17/17
fourth [4]  4/16 7/12
7/12 16/16
framing [1]  8/8
fraud [7]  7/8 7/16
7/19 16/16 16/18
16/25 17/2
free [1]  27/8
front [4]  14/5 20/16
29/21 32/22
fully [1]  32/14
further [7]  17/10
17/13 27/23 32/1
32/17 33/18 34/6
future [2]  27/12
29/1

## G

gave [1]  17/13
generally [3]  21/22

generate [3]  24/12
24/16 25/20
get [7]  12/25 13/12
22/13 23/18 26/23
27/5 30/3
gets [1]  9/18
getting [3]  9/23
15/18 18/7
give [5]  4/6 7/4 15/7
30/8 31/9
given [1]  28/13
go [9]  7/25 8/13
12/24 17/7 20/9
22/18 26/24 28/6
29/12
goes [3]  6/15 10/23
11/18
going [5]  3/25 16/3
17/15 32/1 35/4
gone [4]  7/10 7/12
16/14 16/15
good [1]  34/15
got [3]  14/4 19/24
21/18
government [1]
21/12
granting [1]  32/2
greater [1]  33/1
ground [1]  27/21
grounds [3]  23/6
28/2 28/19

## GROUP 2

guess [4]  6/10 7/17
16/17 22/4

## H

had [14]  4/2 4/25
7/11 7/21 10/1
12/23 15/13 16/21
17/11 19/14 28/12
29/24 31/20 33/12
hadn't [1]  30/19
hammer [1]  34/13
hand [4]  8/13 8/13
21/19 21/20
handful [1]  27/15
happen [1]  3/24
happened [1]  24/21
hard [1]  22/5
harm [20]  10/24
24/3 24/10 24/11
24/11 24/15 24/16
24/18 24/25 25/5
25/6 25/7 25/8 25/9
25/9 25/13 28/24
29/1 29/1 29/6
has [18]  6/24 7/5
7/9 8/11 8/18 8/19
8/20 10/18 11/15
12/6 14/14 14/15
17/3 20/8 23/3 29/5
30/12 31/20
have [46]
having [1]  21/11

Case 3:18-cv-00598-MO Document 66 Filed 09/15/20 Page 48 of 63

# H

he [1] 29/14
head [1] 25/2
headed [1] 4/8
hear [3] 7/18 18/7
23/18
heard [2] 20/24
30/19
hearing [2] 17/9
32/4
held [2] 26/7 29/23
help [2] 17/6 33/8
helpful [6] 8/1 9/15
11/13 17/5 19/6
30/11
helpfully [1] 4/22
helps [1] 8/8
here [47]
hinges [1] 9/9
hire [1] 27/8
his [2] 4/3 4/4
history [3] 30/13
30/15 33/3
Hogan [3] 2/8 3/19
8/7
Honor [58]
Honor's [1] 13/24
HONORABLE [1]
1/18
Hopefully [1] 18/7
how [6] 4/4 17/2
21/21 23/4 33/14

however [1] 31/1
hundreds [1] 27/14
hurdles [1] 15/17
Huston [2] 2/11
3/17

# I

I'd [1] 33/14
I'll [11] 4/9 7/18 8/4
17/21 23/22 27/24
30/7 30/8 30/21
31/24 34/22
I'm [20] 5/12 6/6
6/10 6/10 6/11 7/21
7/24 12/22 15/23
16/6 16/11 18/7
19/7 19/13 19/24
22/13 25/15 31/18
32/4 32/17
I've [8] 5/8 5/8 5/9
5/12 7/21 14/4
22/15 33/17
idea [4] 6/2 6/4
28/12 34/15
identify [2] 3/12
18/1
ignored [3] 7/11
7/13 7/14
III [3] 11/24 15/18
16/23
illegal [4] 20/23
21/15 23/8 29/7

imagining [1] 22/5
impacted [1] 16/23
impacts [2] 11/20
29/9
impedes [1] 28/21
import [1] 32/18
important [3] 4/13
24/14 26/13
imported [1] 32/20
improperly [1]
28/21
inappropriate [1]
27/4
INC [2] 1/7 11/11
including [2] 10/24
33/18
Indeed [2] 19/20
29/3
independent [1]
14/11
individual [3] 14/6
21/23 22/17
individualized [1]
31/16
industry [1] 35/13
inform [1] 33/1
informal [1] 34/19
information [1]
5/16
informs [1] 30/14
initial [1] 12/6

Case 3:18-cv-00598-MO Document 61 Filed 04/15/20 Page 49 of 63

**injunction [15]**
13/1 13/1 15/23
27/1 27/3 27/6 27/9
27/9 27/18 28/13
28/20 28/25 29/24
29/25 30/4
**injunctions [1]** 31/2
**injunctive [3]** 28/8
30/17 31/9
**injury [1]** 13/22
**inside [1]** 26/2
**insisting [2]** 9/2
10/12
**instance [1]** 8/20
**instead [2]** 17/16
18/2
**insufficient [1]**
17/12
**intellectual [1]**
12/18
**intend [1]** 17/14
**intended [1]** 10/24
**intent [7]** 8/13 9/12
10/17 10/23 11/21
17/2 29/17
**intentional [9]** 4/9
4/20 6/17 6/23 8/3
20/5 20/6 20/17
33/20
**interesting [2]** 3/21
32/25

**interests [1]** 30/2
**interference [17]**
4/10 4/20 5/21 6/18
6/23 6/25 8/3 9/7
11/17 20/5 20/6
20/17 24/17 25/10
25/13 32/3 33/21
**interferes [1]** 28/18
**interfering [3]** 6/12
26/4 27/17
**invalidates [1]** 13/3
**invitation [1]** 17/15
**invoke [2]** 15/19
24/7
**invoked [2]** 15/11
15/12
**invoking [3]** 11/15
15/5 15/14
**involve [1]** 31/16
**involved [1]** 8/20
**involves [1]** 13/22
**Iqbal [1]** 7/17
**Iqbal/Twombly [1]**
7/17
**irrelevant [3]** 21/7
21/10 21/13
**is [136]**
**isn't [8]** 7/13 19/10
22/25 23/25 24/21
30/18 31/8 32/10
**issue [39]**
**issues [4]** 4/14 4/18

**it [79]**
**it's [33]** 3/20 4/12
5/24 5/25 6/5 8/4
9/25 10/4 11/11
12/3 12/21 13/16
14/6 14/11 14/12
15/18 15/19 15/21
16/22 17/1 17/5
20/13 20/15 21/10
21/11 22/9 22/14
22/23 23/7 30/3
31/1 31/2 32/10
**its [10]** 5/7 6/22
7/15 10/25 11/10
15/25 16/25 29/25
30/13 32/10
**itself [3]** 11/16
14/23 25/2
**Ixchel [5]** 10/14
13/17 14/13 18/20
22/23

**J**

**John [5]** 12/22
12/24 12/24 13/2
22/6
**joint [2]** 34/24
34/24
**Jr [1]** 2/4
**JUDGE [1]** 1/19
**judged [1]** 20/25
**judgment [4]** 33/16

Case 3:18-cv-00598-MO Document 66-1 Filed 09/15/20 Page 50 of 63

**J**

judgment... [3]
33/22 34/5 34/9
just [36]  5/16 6/11
7/4 7/16 7/17 8/2
8/8 9/13 11/5 12/4
14/11 14/19 15/12
15/18 16/2 16/8
16/18 17/24 22/2
22/13 22/16 26/17
26/23 27/9 27/24
29/13 29/15 31/22
33/4 33/4 33/12
33/16 33/17 34/2
35/6 35/13
Justin [3]  2/8 3/18
8/6

**K**

key [2]  8/25 20/2
kinds [1]  7/5
knees [1]  26/17
know [13]  6/7 15/1
16/24 22/5 23/21
24/23 25/1 26/3
26/7 28/1 30/24
32/21 33/1
knowing [1]  32/20
knowledge [15]
4/21 4/23 4/24 5/21
6/12 8/13 9/12 9/18
9/21 9/22 10/2

29/16

**L**

labels [1]  4/10
Labor [1]  12/15
lack [2]  4/21 7/22
landscape [1]  31/25
language [8]  20/18
21/9 28/16 28/18
28/18 28/20 28/21
31/15
last [1]  17/8
late [1]  13/16
late-breaking [1]
13/16
later [1]  6/9
law [36]  4/17 7/7
7/10 7/23 9/21 11/2
11/7 11/14 12/10
12/11 12/11 12/12
12/15 13/10 13/15
14/22 15/2 15/13
15/24 17/20 17/20
18/16 20/7 20/18
20/24 21/1 21/16
21/17 22/19 23/9
23/11 23/24 24/7
26/9 27/1 29/8
lawful [3]  12/10
14/23 15/22
lawsuits [1]  10/9
lawyer [1]  22/8

least [4]  7/13 19/10
25/7 29/9
left [1]  4/8
legal [1]  20/25
legality [3]  18/15
18/24 18/24
legitimate [1]  11/15
less [1]  33/3
lesser [1]  33/1
Let [1]  9/13
let's [5]  23/11 30/15
33/4 33/16 34/22
liability [2]  1/3
11/16
life [1]  4/1
lift [1]  33/10
like [12]  3/22 10/7
12/19 15/12 19/20
19/24 20/21 21/18
23/2 23/14 23/25
33/13
likely [1]  33/16
limited [3]  1/3
16/11 23/14
line [1]  30/8
listen [1]  3/23
litigation [4]  10/9
10/10 10/11 30/2
little [2]  3/24 16/2
LLC [4]  1/3 3/6
14/7 22/8

# L

**LLP [2]**  2/8 2/11
**local [1]**  3/17
**located [2]**  24/7
 25/19
**longer [4]**  5/13 7/22
 29/3 30/18
**look [11]**  5/21 6/4
 6/11 6/21 10/7 10/8
 16/7 25/5 25/16
 31/21 34/22
**looking [2]**  5/15
 16/11
**loss [1]**  25/8
**lost [1]**  26/23
**lot [2]**  9/9 19/20
**Lovells [3]**  2/8 3/19
 8/7

# M

**made [20]**  14/14
 15/13 18/1 18/4
 18/6 18/9 18/12
 18/15 18/17 18/25
 19/3 19/8 19/22
 19/22 28/5 28/7
 30/18 30/22 30/23
 33/13
**make [4]**  4/13
 26/21 26/23 33/14
**makes [2]**  5/13 31/4
**making [2]**  11/23

**management [1]**
 34/23
**mandatory [1]**  4/1
**manufacture [1]**
 11/5
**market [2]**  13/23
 13/23
**matter [4]**  11/14
 12/9 13/9 15/24
**matters [1]**  6/10
**may [6]**  28/4 29/11
 31/10 31/13 31/14
 31/15
**maybe [1]**  34/2
**MCA [3]**  12/21
 12/23 12/25
**me [11]**  5/14 7/4
 9/13 14/5 18/8
 19/10 20/16 25/12
 26/13 32/23 33/8
**mean [3]**  9/14
 26/17 33/6
**means [2]**  9/20 30/5
**meet [2]**  34/12
 35/15
**mentioned [4]**  8/25
 10/16 19/4 21/6
**mere [1]**  29/15
**merely [7]**  6/1 8/21
 9/10 9/24 12/4 12/8
 15/14

**met [1]**  17/8
**method [1]**  5/20
**methodology [3]**
 4/4 23/19 26/16
**MICHAEL [1]**
 1/18
**microphone [1]**
 3/10
**might [8]**  4/24
 22/22 25/2 27/15
 27/16 33/4 33/12
 35/12
**miles [1]**  28/22
**mind [1]**  16/6
**minimum [1]**  3/25
**minutes [1]**  30/8
**MO [2]**  1/5 3/6
**moment [3]**  7/4
 16/8 22/3
**money [1]**  23/4
**more [8]**  26/13
 26/15 26/18 32/14
 32/20 33/5 33/7
 33/16
**morning [3]**  3/21
 4/3 4/5
**MOSMAN [1]**  1/18
**most [5]**  15/9 18/6
 18/9 30/11 31/2
**motion [23]**  4/19
 7/25 8/4 12/7 12/7

Case 3:18-cv-00598-MOC-DCK Document 62-5 Filed 09/15/20 Page 52 of 63

# M

motion... [18]  12/13
14/8 17/12 17/23
18/10 18/17 19/1
19/21 19/23 19/24
20/1 22/12 22/25
28/3 28/8 28/10
32/2 33/20
move [2]  21/14
33/16
moving [3]  23/22
33/23 34/9
Mr [3]  2/4 2/8 2/11
Mr. [1]  4/3
Mr. Aldrich [1]  4/3
much [11]  4/13
6/10 9/18 17/18
19/17 23/4 25/22
26/12 31/25 33/10
34/7
must [1]  33/19
muster [1]  17/23
mute [1]  3/9
my [12]  4/6 6/13
7/13 22/19 25/2
25/4 30/8 30/14
31/7 33/24 34/4
35/11

# N

name [1]  10/16
nature [1]  32/23

necessarily [1]
22/23
need [6]  6/4 25/5
29/4 33/18 34/20
35/11
never [2]  5/12 32/9
new [10]  9/2 10/13
18/2 19/10 19/10
21/18 27/25 32/8
32/10 32/11
Newton [5]  12/22
12/24 12/24 13/2
22/6
Newton-John [5]
12/22 12/24 12/24
13/2 22/6
Nichola [1]  2/4
Nika [1]  3/13
Ninth [4]  11/24
14/20 33/8 33/10
no [32]  1/5 3/5 3/25
5/12 6/3 6/4 7/3
7/22 11/2 13/3
13/11 15/13 19/15
20/5 23/4 27/5
27/11 27/12 27/13
27/16 27/17 27/24
28/13 29/3 29/4
29/16 29/18 29/18
29/20 31/16 33/25
34/6

Nokes [2]  2/11 3/16
noncompete [4]  9/4
9/6 13/3 13/5
noncompetition [1]
15/9
nonresidents [1]
25/25
normally [1]  31/9
not [65]
note [2]  27/24 28/9
nothing [1]  32/6
notified [1]  17/14
notion [1]  11/2
now [12]  5/12 6/10
13/2 14/3 17/22
19/22 21/18 23/2
23/12 32/21 34/8
34/13
number [2]  6/19
7/1
numerous [1]  27/3
NW [1]  2/9

# O

o0o [1]  36/2
occur [5]  24/18
25/5 25/13 25/14
31/23
occurred [4]  26/1
26/2 26/4 26/6
occurring [1]  28/24
occurs [2]  24/3 25/6

# O

off [2]  25/1 26/17
Official [1]  36/11
okay [2]  20/20
 34/16
Olivia [5]  12/21
 12/23 12/24 13/2
 22/6
one [18]  3/25 4/11
 5/16 6/17 6/19 7/1
 7/10 7/12 7/12
 11/10 12/3 17/25
 20/21 21/19 23/20
 23/21 32/14 34/13
ones [1]  19/21
only [9]  6/21 7/20
 23/12 25/15 26/25
 27/8 27/19 30/17
 31/2
open [1]  17/1
opinion [1]  16/22
opportunity [2]
 28/1 33/7
opposed [2]  22/16
 26/16
oral [3]  1/15 3/5 4/7
OREGON [28]  1/2
 1/3 1/9 4/11 7/7
 11/11 12/11 14/25
 15/1 15/13 17/20
 18/16 18/24 18/25
 20/24 21/1 21/9

11/16 23/9  24/9
 24/11 24/12 25/6
 25/19 25/20 28/22
 29/7 29/10
original [1]  36/6
other [13]  6/7 6/14
 13/6 16/4 17/15
 20/7 21/20 24/24
 29/19 31/3 31/16
 32/15 34/6
others [1]  3/10
otherwise [1]  9/17
ought [1]  28/13
our [16]  11/25 12/1
 12/1 12/6 12/12
 12/21 16/24 21/15
 21/25 24/1 24/14
 24/19 28/17 28/19
 28/21 29/22
ours [1]  23/14
out [26]  1/3 3/6
 3/14 4/4 7/15 8/10
 8/11 8/18 10/24
 11/4 11/9 14/15
 15/4 15/22 15/25
 16/25 18/12 19/5
 24/9 25/18 27/5
 27/7 27/15 31/10
 33/4 34/13
Out's [3]  13/21
 14/3 19/13
outcome [1]  31/17

outline [1]  34/24
outside [4]  24/3
 24/3 26/1 26/7
overt [1]  10/18
own [3]  5/7 16/25
 34/19

# P

p.m [1]  35/21
page [2]  18/19 28/9
pages [7]  18/11
 18/11 18/18 19/2
 19/2 28/5 28/10
paid [1]  23/4
papers [1]  24/2
Pardon [1]  20/11
part [2]  5/5 34/24
particular [1]  9/14
parties [3]  26/10
 29/21 31/1
parties' [1]  29/19
party [4]  8/19
 11/15 23/22 33/23
pass [2]  17/12
 17/23
past [3]  7/25 29/2
 33/13
pause [1]  22/2
peek [1]  3/21
pending [1]  20/1
people [1]  23/4
per [1]  13/19
perfectly [1]  12/10

**P**

perform [1]  27/15
performance [3]
 13/5 21/23 31/11
performed [1]
 25/18
performing [1]
 12/19
perhaps [3]  8/1
 16/5 35/14
period [3]  5/7 5/10
 5/10
permitted [1]  8/19
personal [12]  12/14
 12/17 14/11 18/17
 21/19 21/22 22/7
 22/8 22/9 22/14
 22/24 32/24
persons [1]  30/1
perspective [2]  4/2
 34/15
persuasive [1]  6/1
pick [1]  33/21
picture [1]  9/3
place [3]  3/5 18/6
 28/23
plaintiff [32]  1/5
 2/4 3/14 6/23 6/24
 7/5 7/9 7/11 10/15
 10/19 11/5 12/23
 16/14 19/16 19/18
 24/6 24/25 25/7

25/9 25/10 25/19
 25/23 27/23 28/15
 30/19 30/20 31/20
 31/22 33/9 34/1
 34/21 35/1
plaintiff's [3]  5/9
 7/18 15/8
plaintiffs [1]  35/16
plan [1]  35/10
plausibly [1]  8/11
play [2]  30/16
 30/25
plea [1]  3/22
plead [3]  13/12
 14/15 15/25
pleaded [1]  23/8
pleading [1]  7/15
pleadings [1]  21/3
pleas [1]  3/23
plenty [1]  34/21
point [20]  5/5 6/1
 6/19 7/1 11/8 12/20
 13/14 17/10 17/11
 17/12 17/13 17/16
 17/17 18/9 20/20
 23/25 24/19 28/4
 30/13 32/10
pointed [1]  8/10
points [6]  6/14
 17/16 18/14 20/2
 21/7 34/20
policy [1]  11/1

Portland [5]  1/9 2/5
 2/12 2/17 25/19
position [4]  7/19
 9/20 16/24 18/3
possible [1]  22/5
possibly [1]  31/13
potential [1]  27/8
potentially [1]  4/8
power [1]  13/23
practices [1]  27/10
precise [1]  23/25
prefer [1]  34/18
prejudice [1]  13/25
preliminary [2]
 12/25 13/1
presence [1]  23/16
present [1]  5/22
presented [2]  33/7
 33/14
presumptively [2]
 14/23 15/22
pretty [4]  15/16
 15/16 24/1 31/4
prevent [1]  29/1
previously [12]
 4/23 5/8 5/12 7/5
 7/9 7/11 15/4 18/1
 18/4 19/7 19/9 32/9
primarily [1]  20/22
principal [1]  4/20
principally [1]  6/18
prison [1]  3/25

# P

privilege [1] 4/2
probably [2] 23/25
 33/15
problem [1] 7/6
procedural [2]
 30/13 30/15
proceedings [4]
 1/17 3/9 35/21 36/5
PRODUCTIONS
 [3] 1/3 3/6 3/15
Professions [1]
 27/2
profits [4] 24/12
 24/16 25/8 25/20
proper [1] 14/7
propose [1] 34/12
proposed [1] 34/23
prospective [3] 9/8
 30/18 31/2
protect [1] 24/2
protecting [1]
 24/20
provided [1] 8/8
provides [1] 22/21
providing [1] 32/7
proving [1] 13/22
provision [25] 7/7
 8/21 8/23 9/11 9/17
 9/24 10/3 10/10
 10/15 10/22 10/25
 11/3 11/7 12/5 12/8

12/10 13/7 14/21
 14/23 15/6 15/13
 15/19 15/21 18/15
 18/25
provisions [5]
 10/21 11/1 14/9
 15/24 29/19
public [1] 11/1
purpose [1] 11/16
purposes [5] 4/13
 7/13 9/7 21/8 22/6
pursuant [1] 35/3
pursuing [1] 17/17
put [2] 4/1 28/20

# Q

question [10] 16/5
 16/6 16/7 24/21
 25/4 25/12 25/23
 26/13 30/21 31/5
questions [2] 33/23
 34/6
quote [4] 15/8 15/9
 29/24 30/1

# R

radius [9] 5/4 5/11
 6/6 6/8 6/21 10/20
 27/7 29/5 31/15
raise [3] 20/3 23/2
 31/24
raised [7] 6/14 7/2
 13/9 19/7 21/6

raising [1] 19/7
rational [1] 6/5
readily [1] 32/22
reading [1] 22/22
real [1] 7/20
really [11] 4/9
 23/12 30/19 31/18
 31/25 32/3 32/4
 33/6 33/9 34/8
 34/19
reason [9] 12/3
 12/4 12/6 13/20
 13/22 14/15 15/1
 21/1 21/2
reasonability [1]
 21/2
reasonable [1] 21/5
reasons [10] 7/12
 7/15 12/11 14/11
 14/17 17/22 27/3
 32/9 33/17 33/19
recent [2] 18/6 18/9
recess [4] 30/7 30/9
 30/10 35/18
recollection [1]
 22/20
reconcile [1] 22/19
record [7] 3/12
 12/24 16/12 16/12
 23/5 32/22 36/5
recording [1] 3/8

# R

**Records [2]** 12/21
12/23
**reference [1]** 23/3
**referenced [2]**
22/10 22/11
**references [1]** 14/9
**referencing [1]**
15/3
**referred [1]** 4/21
**referring [1]** 22/21
**rejected [2]** 11/25
15/9
**relate [1]** 26/22
**relates [1]** 11/9
**relations [2]** 11/17
20/18
**relationship [5]** 5/1
5/22 6/8 6/12 27/16
**relationships [3]**
24/17 25/11 25/14
**relevant [10]** 4/25
5/1 5/10 5/21 13/23
20/4 22/23 23/7
24/20 28/13
**relied [2]** 16/15
32/11
**relief [8]** 26/25 27/5
27/20 28/8 30/17
31/3 31/5 31/9
**relies [1]** 23/1
**relying [3]** 19/9

**remain [2]** 30/7
32/1
**remained [1]** 15/10
**remedy [1]** 31/5
**remote [1]** 35/12
**repeating [1]** 28/23
**reply [4]** 18/11
18/19 19/2 30/19
**reporter [3]** 2/16
3/8 36/11
**represented [1]**
30/2
**request [2]** 34/2
35/3
**require [2]** 32/16
32/20
**required [1]** 9/21
**requirement [2]**
5/17 5/19
**resident [1]** 24/8
**resolve [1]** 17/6
**respect [19]** 8/17
11/22 13/14 16/23
17/11 18/5 18/14
18/16 18/24 20/2
20/11 20/24 21/15
26/21 27/12 28/7
29/17 34/5 35/4
**respond [3]** 28/2
28/12 31/20
**response [2]** 14/3

**restart [1]** 9/12
**rests [1]** 6/19
**retroactively [1]**
11/6
**review [4]** 32/1
34/3 34/3 34/4
**right [11]** 7/24 14/5
19/11 20/14 20/19
25/1 25/6 25/12
25/21 34/8 34/13
**rise [2]** 15/7 31/9
**rises [1]** 14/19
**RMR [2]** 2/16
36/10
**Room [1]** 2/17
**round [1]** 33/4
**rule [10]** 11/4 11/4
13/19 13/20 13/22
14/15 15/1 15/16
21/1 21/2
**ruled [2]** 5/12 18/21
**rules [1]** 35/4
**ruling [6]** 14/20
16/23 30/8 30/14
32/1 33/8
**rulings [1]** 33/24

# S

**S.B [1]** 11/11
**S.W [3]** 2/5 2/12
2/17
**said [8]** 9/5 13/2

Case 3:18-cv-00598-MO   Document 362   Filed 09/15/20   Page 54 of 63

said... [6]  13/3 15/8
24/14 29/14 33/10
33/12
same [10]  9/20
13/20 13/25 14/17
14/25 15/2 15/3
25/23 31/15 32/2
satisfy [1]  18/12
saw [1]  14/3
say [12]  5/1 6/5
8/15 16/6 25/4
25/24 26/15 33/4
33/5 33/14 33/16
34/22
saying [1]  24/15
says [5]  11/14 13/18
14/14 15/6 17/1
schedule [5]  34/8
34/10 34/23 35/4
35/8
schedules [1]  34/19
Schwabe [2]  2/4
3/14
se [1]  13/19
second [16]  5/5
7/20 9/13 12/5 12/7
13/2 13/14 14/13
14/22 18/10 19/24
25/5 28/8 30/16
30/24 32/14
Section [7]  12/13

14/1 14/16 18/16
see [5]  4/4 4/7 6/11
21/14 34/16
seek [1]  28/19
seeking [1]  10/9
seems [1]  19/20
seen [1]  8/18
sense [1]  5/13
sentence [1]  4/1
separate [2]  13/9
30/21
separately [1]
24/10
September [1]  36/9
service [1]  32/24
services [11]  12/14
12/17 14/11 18/17
21/20 21/22 22/7
22/8 22/10 22/14
22/25
set [2]  3/5 31/8
setting [1]  17/24
several [1]  15/17
share [1]  14/7
shorthand [1]  4/22
should [11]  5/1
6/16 9/11 14/1
19/15 24/6 25/8
27/20 29/8 30/5
30/22
shouldn't [1]  23/13

23/16 23/16
shuffle [1]  26/23
Shumway [3]  2/16
36/9 36/10
side [2]  5/7 17/25
signature [2]  36/7
36/7
signed [1]  24/22
signing [2]  5/3 36/4
similarly [1]  4/15
simpler [1]  33/3
simply [2]  6/9
32/18
since [3]  4/14 8/4
34/18
single [1]  10/21
sitting [2]  24/21
31/10
situation [2]  10/16
28/23
skeptical [1]  5/13
skepticism [1]  5/9
so [69]
some [25]  3/21 5/9
5/13 5/20 5/25 6/1
8/20 10/18 10/18
16/5 16/12 18/7
19/22 22/16 23/16
30/12 30/14 31/10
31/22 32/12 32/12
32/13 32/16 32/19

Case 3:18-cv-00598-MO    Document 60-20    Filed 09/15/20    Page 58 of 63

**some...** [1]  33/18
**someone** [4]  6/7
12/25 24/21 33/12
**something** [1]
26/15
**somewhat** [1]  31/21
**sooner** [1]  35/3
**sorry** [2]  12/22
15/23
**sort** [8]  5/20 7/8
7/14 7/17 22/16
23/14 27/11 31/8
**SOUL'D** [24]  1/3
3/6 3/14 8/11 8/18
10/24 11/4 11/9
13/21 14/3 14/15
15/4 15/22 15/25
16/25 18/12 19/5
19/13 24/9 25/17
27/5 27/7 27/15
31/10
**sounds** [1]  20/21
**sources** [1]  5/15
**speaking** [2]  3/10
23/20
**special** [1]  12/18
**specific** [3]  13/5
21/8 21/22
**specifically** [6]
10/15 10/23 12/16
13/10 14/12 18/5

**spokes** [1]  30/20
**squarely** [1]  11/18
**stage** [2]  7/25 17/12
**stand** [4]  4/7 11/23
16/4 16/17
**stand-alone** [1]
11/23
**standard** [1]  27/10
**standing** [5]  7/22
11/24 14/20 15/19
16/24
**stands** [1]  16/22
**start** [3]  8/4 23/22
30/15
**state** [3]  21/9 23/15
24/24
**statement** [1]  17/1
**STATES** [3]  1/1
1/19 2/16
**static** [1]  18/7
**statute** [14]  13/4
13/13 21/9 21/11
21/11 22/11 22/11
22/20 23/13 23/21
24/2 28/24 28/25
34/4
**statutory** [1]  5/18
**step** [1]  10/12
**stick** [2]  16/12
17/19
**still** [3]  8/12 16/17
16/22

**stop** [1]  9/13
**stopped** [1]  8/1
**straightforward** [1]
31/4
**Street** [1]  2/9
**subject** [4]  21/3
22/12 26/8 30/20
**submit** [12]  9/25
11/1 11/7 11/12
11/20 11/25 14/5
15/21 24/6 24/13
30/5 34/23
**submitted** [3]  10/14
11/10 13/16
**subsequent** [2]  9/3
10/11
**subsidiary** [1]
18/14
**substantive** [1]
12/2
**successfully** [1]
31/11
**such** [1]  31/18
**sued** [1]  12/25
**suffer** [1]  32/12
**suffering** [1]  24/25
**sufficient** [5]  9/11
9/25 15/15 15/20
21/4
**sufficiently** [1]  23/8
**Suite** [2]  2/5 2/12
**summary** [3]  33/16

**S**

summary... [2] 33/22 34/9

supplemental [5] 13/15 17/25 21/25 32/6 32/7

support [1] 11/2

supporting [1] 6/4

Supreme [1] 13/17

sure [6] 6/10 16/8 17/24 19/14 26/21 26/23

surprise [1] 19/15

suspect [1] 35/12

**T**

take [3] 17/14 30/7 34/21

taken [1] 30/10

takes [1] 28/23

talking [1] 20/10

Tank [1] 14/6

targeted [1] 10/15

tempted [3] 33/4 33/12 33/15

ten [1] 4/1

tend [1] 4/1

tends [1] 3/23

tension [2] 21/18 29/13

tentative [2] 4/6 6/13

tentatively [1] 26/3

termination [2] 9/4 9/6

terms [5] 4/24 11/15 15/5 19/11 29/25

territoriality [1] 26/22

than [4] 26/13 32/21 33/13 34/6

Thank [20] 3/20 8/6 16/1 17/18 19/17 19/19 20/14 20/19 23/10 23/23 25/21 25/21 26/12 27/22 30/6 30/11 34/7 35/17 35/18 35/19

that [220]

that's [34] 4/21 5/5 6/13 6/25 7/17 7/22 8/16 8/16 8/22 8/22 9/4 9/15 9/21 10/3 10/4 13/25 15/7 19/7 19/12 19/21 20/1 20/20 24/8 25/4 25/8 25/20 27/19 29/16 30/20 31/17 31/23 32/8 33/14 34/16

their [6] 11/6 19/5 22/24 22/25 25/8

them [9] 4/14 6/15 10/16 14/5 27/8 28/20 32/5 32/13 33/14

then [27] 3/23 4/2 4/7 4/16 5/25 6/22 6/24 8/14 10/1 11/20 13/14 16/3 18/11 18/14 19/23 20/4 20/8 25/13 28/9 29/16 30/10 31/15 31/24 32/1 32/16 33/15 34/22

theory [9] 4/20 5/10 16/18 16/18 17/19 17/20 17/24 31/9 33/7

there [28] 5/24 5/25 6/1 6/3 6/14 7/14 7/16 8/1 8/10 8/19 9/13 10/14 10/18 11/14 12/9 12/10 12/22 15/13 16/11 16/13 20/5 22/2 23/4 26/20 27/15 28/19 29/16 32/21

there's [33] 6/5 6/22 6/25 7/3 8/15 11/2 11/8 12/5 12/20 13/4 13/8 13/11 13/14 14/20

there's... [19]  14/22 15/17 17/1 20/2 23/24 27/2 27/11 27/12 27/13 27/17 29/4 29/6 29/18 29/18 29/20 29/22 30/21 32/6 32/19

therefore [5]  14/16 14/23 15/14 15/24 28/19

these [23]  3/8 4/25 6/16 7/2 8/3 8/16 10/20 15/22 15/24 16/13 17/23 18/1 18/4 19/6 21/19 27/25 29/3 29/4 29/17 29/19 32/16 33/19 33/21

they [12]  21/4 21/6 22/22 24/7 24/22 26/3 27/5 27/8 28/17 30/3 32/24 32/24

they'd [2]  21/17 23/2

they're [8]  4/10 10/9 10/10 14/7 21/19 22/20 24/25 33/22

they've [1]  21/18

thing [5]  9/20 14/25

things [5]  4/2 4/7 13/23 15/22 25/15

think [29]  4/12 4/22 5/3 5/18 7/1 7/24 9/9 9/23 10/5 11/18 14/18 15/17 16/24 17/3 17/23 20/15 22/14 22/14 22/23 23/16 23/19 24/1 24/19 24/24 25/15 32/17 32/21 33/15 34/14

thinking [1]  4/23

thinks [1]  7/15

third [9]  2/17 7/2 7/20 8/19 9/18 11/19 11/22 14/18 15/25

Thirteenth [1]  2/9

this [77]

those [26]  4/1 4/11 5/19 6/13 7/8 7/24 7/24 8/12 10/25 13/24 14/7 14/9 14/9 14/10 18/6 19/3 23/6 23/18 24/5 24/13 27/6 27/14 28/16 29/20 29/21 32/25

thought [2]  16/20 18/1

thoughts [2]  4/6 6/13

thousand [1]  28/22

thread [1]  8/15

threatened [3]  10/9 10/10 10/11

three [12]  4/9 4/15 6/16 8/10 8/12 14/5 17/15 27/4 27/18 29/3 29/4 29/17

threshold [1]  14/20

through [2]  16/2 28/11

tie [2]  4/3 4/3

time [19]  3/4 5/2 5/5 5/6 5/7 5/10 5/10 5/23 6/22 10/2 15/11 16/7 16/8 17/13 18/9 19/23 22/5 32/5 34/21

timeline [2]  35/14 35/16

times [1]  4/24

timing [10]  4/22 5/6 6/15 6/19 6/20 7/24 16/4 16/6 20/3 20/8

today [9]  3/25 4/23 7/13 16/17 19/9 30/12 31/10 31/23 35/14

today's [1]  4/13

together [1]  34/12

**T**

too [1]  9/14
top [1]  25/1
tort [6]  11/5 11/21 15/8 15/8 15/15 27/11
touch [1]  26/21
tough [1]  30/20
towards [1]  34/9
transcript [3]  1/17 36/5 36/6
tried [2]  12/25 17/25
true [5]  10/4 11/20 14/25 24/8 29/16
try [1]  34/13
trying [2]  22/13 24/7
turn [2]  17/21 23/11
turning [1]  34/20
two [12]  4/10 4/24 5/15 14/11 16/4 18/14 24/13 34/22 35/1 35/2 35/5 35/8
Twombly [1]  7/17
type [3]  10/7 10/16 22/9
types [1]  22/22

**U**

UCL [16]  8/2 24/20 24/20 25/25 26/8 26/21 27/20 27/23 30/5 30/15 31/1 31/3 32/2 34/3 34/5 34/22
under [22]  12/11 12/12 12/14 12/15 13/21 14/1 14/13 14/22 15/1 15/13 18/15 20/7 20/18 21/1 21/16 21/17 23/8 27/1 27/2 27/20 29/7 31/3
underlies [1]  15/22
underlying [1]  32/23
understand [5]  21/21 22/4 26/4 33/8 33/10
understanding [2]  3/24 28/17
unfair [3]  4/16 23/11 27/1
unique [1]  12/18
UNITED [3]  1/1 1/19 2/16
unknown [1]  31/12
unlawful [3]  13/7 14/13 14/22
unnamed [1]  31/13
unprepared [1] 32/18
unreal [2]  18/21
unusual [1]  12/18
up [6]  28/22 30/21 33/21 35/5 35/7 35/16
upon [5]  16/15 19/25 28/21 31/1 31/25
us [7]  2/8 4/5 17/9 17/13 20/3 20/8 34/15
use [1]  28/18
used [5]  8/17 9/10 28/16 28/17 29/6
useful [1]  33/11
using [1]  29/9

**V**

valid [2]  9/17 15/10
vantage [1]  24/19
variety [1]  33/17
various [1]  26/14
versus [4]  3/6 5/23 21/10 32/15
very [7]  17/18 19/17 25/21 26/12 33/3 34/7 35/17
viable [1]  7/23
video [2]  3/5 3/9
Videoconference [1]  1/16
view [2]  6/10 31/7
violation [2]  7/6 7/7

**V**

void [4]  15/7 15/10
 15/14 21/10
voidable [3]  15/7
 15/10 21/10

**W**

wait [1]  13/2
waited [1]  8/2
waive [15]  8/21
 8/23 9/10 9/17 9/24
 10/3 10/25 11/3
 11/6 12/4 12/8 13/7
 14/21 14/24 29/19
waiver [1]  31/16
walk [1]  16/2
want [15]  4/6 5/2
 16/2 16/12 17/24
 20/2 23/12 23/18
 26/15 26/21 26/23
 28/1 31/10 34/3
 34/12
wanted [2]  12/24
 27/8
was [27]  4/4 5/22
 6/12 9/2 9/3 9/5
 10/12 10/14 12/1
 12/12 15/3 15/10
 15/14 17/2 17/12
 18/10 19/12 19/14
 21/6 22/11 22/20
 24/2 24/23 25/16

Washington [1]  2/9
wasn't [5]  7/13
 12/1 16/22 22/15
 33/9
watching [1]  4/3
way [5]  4/7 4/22 5/3
 33/6 34/19
we [71]
we'd [2]  28/1 33/13
we'll [4]  16/9 17/19
 33/21 35/18
we're [6]  4/19 4/23
 8/2 11/23 16/3
 21/10
we've [5]  8/18 13/9
 19/6 26/16 33/13
website [1]  17/1
week [3]  13/16
 18/23 35/16
weeks [5]  34/23
 35/1 35/2 35/5 35/8
well [8]  6/6 7/12
 11/21 22/9 22/13
 27/21 33/4 35/17
well: [1]  8/13
well:  intent [1]
 8/13
went [2]  4/5 13/23
were [14]  3/21 10/1
 13/25 15/20 17/15
 19/20 19/21 19/22

29/5 33/6 33/14
29/25 33/6 33/15
19/22 19/23 26/7
27/25 30/23 32/24
what [16]  4/9 8/15
 9/21 9/23 10/6 10/6
 17/11 20/23 21/4
 23/19 28/14 29/13
 29/14 30/22 31/23
 33/10
what's [2]  24/20
 35/10
whatever [1]  31/17
when [8]  3/22 6/8
 14/1 15/6 16/25
 17/8 24/22 31/12
where [26]  4/7 8/19
 12/9 12/22 15/4
 15/4 18/1 18/12
 24/6 24/10 24/18
 24/21 24/25 25/2
 25/5 25/12 25/13
 25/16 25/18 25/19
 28/5 28/22 28/23
 29/23 29/24 32/4
whether [6]  5/21
 6/11 10/4 20/22
 23/20 31/5
which [16]  5/3 8/13
 13/22 14/14 16/9
 21/6 21/22 23/19
 25/18 26/6 30/13
 30/22 32/5 32/10
 32/20 33/1

**while** [1] 3/10
**who** [4] 24/7 24/24
27/13 27/15
**wholesale** [1] 32/18
**whose** [1] 30/2
**why** [13] 6/16 7/15
16/18 17/22 19/7
20/25 21/14 22/4
22/5 22/8 22/13
27/3 33/19
**Will** [1] 35/1
**Williamson** [2] 2/4
3/14
**wins** [1] 6/23
**wish** [1] 26/18
**within** [2] 24/12
34/22
**without** [1] 36/6
**word** [2] 8/16 9/9
**words** [2] 13/6 20/7
**work** [2] 35/1 35/5
**working** [1] 35/12
**works** [1] 35/2
**worst** [1] 3/24
**would** [32] 5/3 8/1
8/15 10/6 11/1 11/5
11/13 15/23 22/18
23/5 23/24 23/25
24/6 24/13 25/18
25/20 27/3 27/7
27/9 28/14 29/25
31/8 31/9 31/11
32/20 33/8 33/11
33/15 34/2 34/15
35/3 35/11
**wouldn't** [1] 35/13
**wrong** [3] 6/9 9/16
32/6
**wrongful** [26] 7/8
8/14 9/1 9/7 9/11
9/25 10/6 11/3
11/18 11/23 12/3
12/5 12/9 13/8
13/11 14/19 14/24
15/15 15/20 18/5
18/13 20/11 20/24
21/1 29/14 29/15
**wrongfulness** [15]
7/3 7/9 9/15 16/4
16/5 16/8 16/10
16/13 16/16 16/19
17/20 17/24 20/4
20/6 21/8
**wrongfulness:** [1]
7/6
**wrongfulness: the**
[1] 7/6
**Wyatt** [2] 2/4 3/14

**Y**

**years** [3] 4/1 27/5
29/5
**yes** [6] 18/4 19/19
20/13 22/18 25/24

**yet** [4] 20/25 21/21
31/12 33/1
**you** [81]
**you'll** [3] 16/14
30/7 34/21
**you're** [5] 14/1 19/9
20/10 24/15 26/16
**you've** [6] 17/21
17/22 17/25 23/15
25/6 26/14
**your** [78]
**yourself** [1] 3/12